[Montgomery Traction Co. *et al.* v. Harmon.]

# Montgomery Traction Co. *et al. v.* Harmon.

140   505
143   544

*Bill in Equity by Minority Stockholder against a Corporation to Cancel Alleged Illegal Contracts, and to Prevent Corporate Wrongs.*

1. *Right of stockholder to redress corporate wrongs; what must be shown.*—Before a stockholder can maintain a bill in his own name against the corporation of which he is a member, to enforce the rights of a corporation, or to redress or prevent corporate wrongs, he must show to the satisfaction of the court that he has done all in his power to obtain, within the corporation itself, the relief which he seeks; that he has made an honest effort to get the governing body of the corporation to enforce the alleged right, or redress the wrong, that in failing with them he then applied to the stockholders of the corporation for the necessary relief.

2. *Same; when request of governing body need not be shown.*—A stockholder may file a bill in equity in his own name to enforce the rights of the corporation of which he is a member, without first requesting the directors or the governing body to redress the alleged corporate wrongs, when it is made to appear by the averments of the bill that, if such request had been made, it would have been refused, or, if granted, the litigation would have been under the direction and control of those who were themselves the wrongdoers.

3. *Same; bill must allege the facts showing excuse for not requesting governing body to sue, and not mere conclusions.*—Where a bill is filed by a stockholder of a corporation, to have redressed alleged corporate wrongs, without having made a request of the managing body of the defendant corporation to have corrected the grievance complained of, the complainant must aver in his bill the facts constituting his excuse for not making such request with particularity and definiteness; the averment of conclusions will not suffice, but the facts upon which these conclusions are based must be averred.

4. *Same; when directors of corporation occupy a fiduciary relation; contracts between two corporations.*—While the directors of a private corporation are not technically trustees, they occupy

[Montgomery Traction Co. *et al.* v. Harmon.]

a fiduciary relation, and are required to exercise their best care and judgment in the interest of the corporation, and will not be allowed to exercise powers confided to them to the detriment of the corporation in advancement of their own private interests, or of the interest of another corporation in which the stockholders are interested; and, therefore, a contract made by one corporation with another corporation, which latter corporation, in addition to holding a large majority of the stock of the first corporation, controls its board of directors by whom the contract was authorized, is invalid and unenforceable.

5. *Bill to enforce corporate rights; transferee of stock proper party.* Where a bill is filed by a minority stockholder to enforce the rights of a corporation, and also to have cancelled certain stock alleged to have been issued under a void contract, which stock is alleged to have been transferred to one who had notice of the alleged illegal transaction, the transferee of such stock is a proper party defendant.

6. *Equity pleading; on appeal from decree upon demurrer, a decree overruling a motion to quash a decree pro confesso can not be considered.*—On an appeal from a decree of a chancellor overruling respondent's demurrer to bill in equity and motion to dismiss the bill for the want of equity, a decree which had been rendered by the chancellor overruling and denying a motion of one of the respondents to set aside and quash a decree *pro confesso,* cannot be considered.

APPEAL from the City Court of Montgomery in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the appellee against the appellants. The averments of the bill, necessary to an understanding of the decision on the present appeal, are sufficiently shown in the opinion.

The purpose of the bill is to set aside and cancel the contracts between J. G. White & Company and the Montgomery Traction Company, dated November 3d and March 25th, respectively, attached as exhibits "A" and "B" to the bill of complaint, and to enjoin the Montgomery Traction Company and all persons for it, or in its name, from issuing any bonds to J. G. White & Company on account of either of said contracts, and also to enjoin the issuance of the 750 shares of the capital stock.

of the Montgomery Traction Company of the par value of seventy-five thousand dollars referred to in the contract of March 25th, 1903, which had not been issued at the time the bill was filed. The bill also seeks to have cancelled as fictitious and fraudulent the 2243 shares of stock issued to J. G. White & Company, and the 248 shares of stock issued to J. G. White & Company, trustee, and by it transferred and delivered to W. H. Ragland.

The bill, also, as an incident, seeks to have an account stated between J. G. White & Company and the Montgomery Traction Company, as a basis of determining the amount, or value of the work and labor done and agreed to be done and material furnished and agreed to be furnished by J. G. White & Company, under the contracts dated November 3d and March 25th, respectively, in order to determine whether the consideration for the six hundred and twenty-five thousand dollars worth of bonds and stock of the Montgomery Traction Company is adequate, so as to determine whether the contracts for the issuance of this stock and these bonds is fraudulent, or in violation of the constitution and laws of the State of Alabama; also, for the purpose of determining the amount which the Montgomery Traction Company is liable for to J. G. White & Company on account of work and labor done, and material furnished or for other causes, so as to determine whether said amount exceeds the amount that J. G. White & Company owed to the Montgomery Traction Company, on account of its subscriptions to 2243 shares of stock of said company, so that the debt for said subscriptions, which J. G. White & Company owes to the Montgomery Traction Company, might be set off or applied in payment of the debt which the Montgomery Traction Company owes or would owe upon the statement of an account to J. G. White & Company.

The Montgomery Traction Company and W. H. Ragland each moved the court to dismiss the bill for the want of equity. The Montgomery Traction Company demurred to the bill upon the following grounds: 1st. That said bill of complaint is without equity. 2d. It

does not appear by the allegations of said bill of complaint but that suit would have been instituted in the name of the corporation, Montgomery Traction Company, to redress the alleged wrongs, had proper application been made to the stockholders of said corporation. 3d. It does not appear by the allegations of said bill of complaint that the complainant ever sought to have said alleged wrongs redressed by the corporation, Montgomery Traction Company, as required by law. 4th. It is not alleged in the bill that complainant is a creditor of the corporation, but simply a stockholder thereof, and, as such, there are no facts shown authorizing a stockholder to file a bill requiring another stockholder to pay for a subscription to the capital stock of the corporation. 5th. It appears in and by said bill of complaint that under the terms of the mortgage itself, which is attached as an exhibit, that the bondholders cannot look to the stockholders or directors of the corporation, or hold the stockholders or directors for any act or failure to act, but that the property alone constitutes the security. 6th. It is not alleged in said bill of complaint that J. G. White & Company had the right to become a subscriber to the capital stock of the corporation. 7th. Said bill fails to make the directors parties defendant to the bill of complaint, personally or as directors. 8th. There are no facts alleged in the bill of complaint constituting a legal excuse why the complainant failed to call upon the stockholders or directors to redress the wrongs complained of. 9th. Said bill of complaint is multifarious in that it joins two separate and distinct causes of action against J. G. White & Company and W. H. Ragland. 10th. Said bill improperly makes W. H. Ragland a party defendant. 11th. Said bill fails to show that the payments of subscription to the capital stock of the Montgomery Traction Company by J. G. White & Company has ever been demanded by the corporation. 12th. Said bill fails to show that the payment of the subscription to the capital stock of the Montgomery Traction Company has ever been demanded by the corporation, or that J. G. White & Company is insolvent, or any other legal excuse why payment should be demanded. 13th.

Said bill of complaint fails to allege any facts showing wherein the complainant has a right to call upon J. G. White & Company for the payment of its subscription to the capital stock of the Montgomery Traction Company. 14th. The facts alleged in the bill of complaint show that they relate to acts concerning the interior affairs and management of the Montgomery Traction Company, and said bill fails to allege any fraud on the part of J. G. White & Company, or the Montgomery Traction Company, or any of its officers or directors. 15th. There are no facts alleged in the bill of complaint showing that J. G. White & Company could control the action of the board of directors as to the matters contained in the said bill of complaint. 16th. There are no facts alleged in the bill of complaint showing that J. G. White & Company did control the action of the board of directors. 17th. It is shown in and by said bill of complaint that a large number of the present board of directors were elected subsequent to the acts complained of. 18th. It is not averred in said bill of complaint that J. G. White & Company can control a majority of the present board of directors.

The defendant, W. H. Ragland, demurred to the bill upon the same grounds assigned by the Montgomery Traction Company, and in addition thereto upon the following grounds: Said complainant cannot call upon this defendant to surrender the stock held by him until the complainant first applies to the corporation, the Montgomery Traction Company, to redress the wrongs, or show some legal excuse why he should not do so. These motions and demurrers were filed on June 19, 1903.

On September 28, 1903, there was a decree *pro confesso* rendered by the register against J. G. White & Co., it having been made to appear as recited in said decree that the proper order of publication was made, calling upon said J. G. White & Company, who were non-residents, to answer. There was a motion made by J. G. White & Company to set aside this decree of *pro confesso*.

[Montgomery Traction Co. *et al.* v. Harmon.]

On November 9, 1903, there was a decree rendered, overruling the demurrers, and the motions to dismiss the bill for want of equity, which demurrers and motions were filed by the Montgomery Traction Company and W. H. Ragland. On the same day there was a separate decree rendered overruling the motion of J. G. White & Company to set aside the decree *pro confesso* against it. The respondents to the bill prosecute the present appeal. The Montgomery Traction Company and W. H. Ragland separately assigned as error the rendition of the decree overruling their separate motions to dismiss the bill for the want of equity, and their demurrers to the bill. J. G. White & Company assigned as error the decree of the court overruling its motion to set aside the decree of *pro confesso* against J. G. White & Company.

GRAHAM & STEINER, for appellants.—The bill is fatally defective in that it does not aver a demand upon the directors of the Montgomery Traction Company to redress the wrongs complained of, or to bring the present suit. It has long been the settled law that, before a stockholder can bring a suit to enforce in his own name a corporate right, he must exhaust every means within his power to have the corporation itself remedy the wrong, either by application to the directors, or, that failing, to the stockholders of the corporation. Even then, in order to be heard in a court of equity, he must allege with particularity and clearly, every intendment being taken against him, the facts of his unsuccessful demand, in order that the court may judge for itself whether his effort has been simulated, or earnest, and his suit the only means of righting the wrong.—*Montgomery Light Co. v. Lahey,* 121 Ala. 131; *Decatur Mineral Land Co. v. Palm,* 113 Ala. 531; *Steiner v. Parsons,* 103 Ala. 215; *Bell v. Montgomery Light Co.,* 103 Ala. 275; *Hawes v. Oakland,* 104 U. S. 400.

No facts are averred which excuse making the required demand.—*Montgomery Light Co. v. Lahey,* 121 Ala. 131; *Steiner v. Parsons, supra; Dodge v. Woolsey,*

[Montgomery Traction Co. *et al.* v. Harmon.]

59 U. S. 331; *Heath v. Erie Ry. Co.*, 8 Blatch 347; *Crumlish v. Shen*, 28 West Va. 633; *Peabody v. Flint*, 6 Allen 52; *Boston v. Theatre Co.*, 104 Mass. 378.

The bill is multifarious in that it joins two separate and distinct causes of action against each of the defendants, J. G. White & Company and Ragland, and also in making Ragland a party defendant. The construction contracts sought to be annulled are independent of the subscription contract sought to be enforced. There is a confusion of independent causes of action, and the bill is bad for multifariousness.—*Jones v. Jones,* 68 Ala. 119; *O'Bear Jewelry Co. v. Volfer & Co.*, 106 Ala. 205; *Beddow v. Sheppard*, 118 Ala. 474; *Hall v. Henderson*, 114 Ala. 601; *Walker v. Powers,* 104 U. S. 245.

It is well settled that a demurrer for multifariousness is a proper remedy for the improper joinder of distinct matters, and especially where different decrees and proofs will be required or where one defendant will be hampered in a controversy to the greater part of which he is a stranger.—*Church v. Citizens St. R. R. Co.*, 78 Fed. 526; *McIntosh v. Alexander,* 16 Ala. 87; *Adams v. Jones,* 68 Ala. 117; *American Refrigerating Co. v. Linn,* 93 Ala. 610.

So much of the bill as sets up the original subscription of J. G. White & Company and demands payment thereof is without equity. Neither complainant nor the Montgomery Traction Company has any equity to compel J. G. White & Company to make payments upon its subscription. In the absence of an express agreement to pay a stock subscription at a specified time or on the happening of a prescribed event, a call from the corporation is a condition precedent to a stockholder's liability. No action can be maintained by the corporation and *a fortiori* by a stockholder until the liability becomes fixed. To the effect that a call is necessary the following cases out of a great number may be cited:—*Bingham v. Rushing,* 5 Ala. 403; *Ala. R. R. Co. v. Rowley,* 9 Fla. 508; *Barrett v. Alton R. R.,* 13 Ill. 504; *Spangler v. Indiana R. R.,* 21 Ill. 276; *Braddock v. Philadelphia R. R.* 45 N. J. Law, 363; *Venture R. R. v. Hartman,* 116 Cal. 260; *Grosse Isle Hotel Co. v. l'Aansons,* 42 N. J. Law

10; 43 N. J. Law 442; *Bank of South Australia v. Abraham,* L. R. P. C. App. 265; *Grissell's Case,* L. R. 1 Chanc. App. 528.

The bill, in so far as it seeks to enforce a payment by J. G. White & Company or by Ragland for the 248 shares is without equity. In the absence of an agreement of subscription, it needs no argument to show that there is nothing which a court of equity can enforce. Whatever may be the powers of that court to annul a fictitious issue of stock, it is clear that it will not foist upon the parties an agreement when they made none.—*Roman v. Dimmick,* 115 Ala. 233; *Elyton v. Birmingham Co.,* 92 Ala. 407; *Nicrosi v. Irvine,* 102 Ala. 648; 17 Am & Eng. Cor. Cases, p. 268; 1 Cook on Corp. §§ 199 *et seq. note* p. 258.

R. L. HARMON, *contra.*—A corporation organized and existing under the laws of Alabama can only issue stock upon payment for same at its par value, in money, or property at its reasonable money value, or work and labor done at the reasonable money value of same.—See § 234 of Art. XII of the Constitution of Alabama, 1901. This section is the same as section 6 of Art. XIV of the Constitution of Alabama of 1875, which reads: "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void."

The contracts dated November 3d and March 25th, respectively, attached as exhibits "A" and "B" to the bill by which the officers of the Montgomery Traction Company undertook to bind the Montgomery Traction Company to pay to J. G. White & Company shares of its capital stock of the par value of three hundred and twenty-five thousand dollars, and bonds of the par value of three hundred thousand dollars, for a consideration to the Montgomery Traction Company not exceeding in value two hundred thousand dollars, as shown by the bill, are void. The attempt on the part of the officers and directors of the Montgomery Traction Company to thus dispose of its capital stock and bonds for less than

[Montgomery Traction Co. *et al.* v. Harmon.]

one-third of the par value of same was *ultra vires*, fraudulent and void.—*Parsons v. Joseph*, 92 Ala. 403; *Williams v. Evans*, 87 Ala. 725; *Tutwiler v. Tuscaloosa C. I. & E. Co.*, 89 Ala. 391; *Elyton L. Co. v. Birmingham Warehouse & Elevator Co.*, 92 Ala. 407; *Garrett v. Kansas City Mining Co.*, 35 Am. St. Rep. 713 (13 Mo. 330.)

The issuance of such stock—watered or spurious stock—which has not been paid for at its par value, in compliance with the constitution and laws of the State of Alabama, is fraudulent and void as against the rights of a subscriber or shareholder who has legally paid for his shares and who did not agree to or participate in or ratify the issuance of the watered or spurious stock. The same is true as to the issuance of bonds of the corporation upon a fictitious, simulated or inadequate consideration. The act of issuing such watered or spurious stock or bonds is a fraud by the officers or directors participating in the issuance of the same, and is also a fraud on the part of the corporation for whom such officers or directors act, although the corporation itself may be helpless and completely in the power of its officers and directors. Any subscriber or shareholder who owns stock that he has legally paid for may complain at and have set aside such fraudulent contracts, or transactions, and require the spurious stock and bonds to be cancelled or paid for.—Cook on Corporations (5th ed.) §§ 41, 669; *Parsons v. Joseph*, 92 Ala. 403; *Perry v. Tuscaloosa etc. Co.*, 93 Ala. 364.

The facts, as set out in this bill of complaint, show clearly that the suit can be maintained by complainant as a *bona fide* holder of the stock of the Montgomery Traction Company and that it was not necessary to apply either to the Montgomery Traction Company, the board of directors of the said company, or to the stockholders of the Montgomery Traction Company to redress the wrongs complained of.—See *George et als v. Cent. R. R. & B. Co.*, 101 Ala. 607, 624; *Bell v. M. L. Co.*, 103 Ala. 275, 279; *Morris v. Elyton Land Co.*, 125 Ala. 263; *Steiner et als. v. Parsons*, 103 Ala. 215, 221, 222;

Cook on Corporations (5th ed.) § 41; 20 Ency. of Pl. &. Pr., pp. 781-789, and especially on page 783; Cook on Corporations, §§ 669, 741; 4 Thompson on Corporations, §§ 4504, 4507, 4518, 4523.

It appears to be well settled by the authorities that a shareholder in a corporation may bring suit in his own name, in behalf of himself and other shareholders similarly situated, without making a request of the board of directors of the corporation to bring suit, and without making a request of the corporation and without waiting for any action to be taken by the shareholders of the corporation: (a). When the act complained of is *ultra vires* of both the board of directors and a majority of the shareholders so that neither the directors nor a majority of the shareholders can *ratify* the same against the objection of a minority of the shareholders.—Cook on Corporations, § 740, p. 1614, and § 742; *Stebbins v. Perry County*, 47 N. E. Rep. 1048; *Botts v. Simpsonville T. Co.*, 88 Ky. 54; 4 Thompson on Corporations, §§ 4504, 4507; 4 Thompson on Corporations, §§ 4564-4570; *Wood v. Union, etc. Ass'n.*, 63 Wis. 9; Morawetz on Private Corporations, §§ 242, 245, 249-259, 622.

(b) When the acts complained of are *ultra vires* and fraudulent as to a shareholder who is in position to complain, no request of the directors is necessary.—20 Ency. Pl. & Pr. 783; *Heath v. Erie R. R. Co.*, 8 Blatchf. U. S. 347; Morawetz on Private Corporations, §§ 249, 272, 622, 624; *Hazard v. Durant*, 11 R. I. 196, 207.

(c) When the corporate management is under the control of the guilty parties, or when a majority of the board of directors voted for, or aided in the action complained of, and where a majority of the shares of stock, outstanding, is held or controlled by one or more of the guilty parties.—Cook on Corporations, § 741; *George et al. v. Central R. R. & B. Co.*, 101 Ala. 607, 624; *Bell v. Montg. Light Co.*, 103 Ala. 275; *Nathan v. Tompkins*, 82 Ala. 437, 445; *Johns v. McLester*, 34 So. Rep. (Ala.), 174, 177.

TYSON, J.—The complainant in this case is the owner of one share of the capital stock of the Montgomery

Traction Company, a corporation under the laws of the State of Alabama, with an authorized capital stock of one million dollars. He files this bill for himself and all other shareholders of said company who might join in said suit to cancel certain stock in the Traction Company issued to J. G. White & Company, a New York corporation, under two construction contracts between the two companies in the course of execution by White & Company, and to prevent the issue of certain other stock and bonds of the Montgomery Traction Company to J. G. White & Company under said contract, or to compel full payment for said stock and bonds. The Traction Company is made a defendant to the bill and also one W. H. Ragland, as a transferee with notice of part of said stock issued to White & Company. The Montgomery Traction Company and Ragland demurred to the bill and moved to dismiss it for want of equity, and they appeal from the decree overruling the demurrers and sustaining the equity of the bill.

It is contended in behalf of the appellants that the bill fails to show a demand upon the directors of the Traction Company to institute this suit or sufficient excuse for failure to make this demand. It is well settled "that a stockholder may bring suit in equity in his own name and enforce the rights of the corporation without first requesting the directors to sue, when it is made to appear that if such request has been made it would have been refused, or if granted that the litigation following would necessarily be subject to the control of the persons opposed to its success; and that where the directors of the corporation are themselves the wrong doers or the partisans of the wrong doer they are incapacitated from acting as the members of the corporation in any litigation which may be instituted for the correction of the wrong which it is alleged they have committed and approved."—*Steiner v. Parsons,* 103 Ala. 221.

Where no demand upon the board of directors to institute the suit is shown, and the stockholder relies upon the fact that an application to the directors to sue would have been in vain, the facts upon which such conclusion rests must be set out so that the court may judge intel-

ligently for itself as to whether the conclusion of the
stockholder is well founded.—*Steiner v. Parsons, supra.*
It is not sufficient to aver that the board of directors or
a large majority of them are under the control of the of-
fending parties, nor that they are interested as guilty
parties in the frauds and wrongs complained of; the
facts showing such control or such interest must be set
out.   We are of the opinion that the averments of the
bill conform to these requirements, and that the court
was correct in its conclusion upon the facts bearing on
this issue.

The board of directors of the Traction Company is
composed of nine members.   At the time the bill was
filed three of them resided in the city of Montgomery,
the principal place of business of the Traction Company,
and the remainder in New York. . The six non-resident
members had only one share of the stock each in the
Traction Company transferred to .them by J. G. White
& Company to enable them to qualify.   The president of
the Traction Company, one of the non-resident direc-
tors, was elected at the instance of White & Company;
the secretary of the company was an employee of White
& Company, and its assistant secretary one of White &
Company's attorneys.   It is presumed that directors
will do their duty, but this presumption is overcome by
the presence of causes sufficient to influence them to do
otherwise.—*Decatur Mineral Land Co. v. Palm, et al,*
113 Ala. 531.   One of the three resident directors was
employed by J. G. White & Company in the execution
of the contracts which the bill assails, and two of the
non-resident directors,. holding only one share of stock
each in the Traction Company, are financially interested
in J. G. White & Company, whose title to two thousand
nine hundred and ninety-three shares of the Traction
Company's stock and three hundred thousand dollars
of its bonds, the bill seeks to invalidate.   As to these
three members of the board it can certainly be said that
causes sufficient are shown in the bill to influence them
to disregard their duty as directors of the Traction Com-
pany in the manner of this proceeding.   It is unreason-
able to suppose that the four of the remaining directors

[Montgomery Traction Co. *et al.* v. Harmon.]

who are residents of New York, and who had practically no stock in the Traction Company, which is doing business in Alabama, and who were made directors at the instance of White & Company through whom they were enabled to qualify by the transfer to each of one share of stock, became directors in their own interest. The conclusion is irresistable that they accepted the position in the interest of J. G. White & Company, also of New York, and were subject to the influence of its interests. It cannot be supposed that under these circumstances these directors would have directed a suit whose purpose was to invalidate the contracts of White & Company with the Traction Company or deprive White & Company of illegal benefits derived under such contracts, or if such suit was directed that they would prosecute it in a manner hostile to the interests of J. G. White & Company. It is apparent, therefore, taking the averments of the bill to be true, that at least all but two of the board of directors of the Traction Company at the time this bill was filed were under the control of J. G. White & Company; and it appears that these two, with knowledge that they were sacrificing the interests of the Traction Company, voted for the contracts with White & Company and the issue to it of the stock and bonds. A request to the board of directors thus composed to institute this suit would have been vain, or if acceded to, the litigation following would have been subject to the control of the persons opposed to its success. The facts averred in the bill show a sufficient excuse for failure to make a demand upon the board of directors to sue.

The bill shows that on the 26th day of August, 1902, a meeting of the stockholders of the company was held at which the board of directors were directed to issue to J. G. White & Company two thousand two hundred and forty-three shares of the capital stock of the company on account of promoting and developing the property of the Montgomery Traction Company, and on account of the labor performed and materials furnished to said date. The resolutions directing the issue of the stock recited that it was to be payment on account, and that in addition thereto there should be issued to White &

Company, bonds at the rate of ninety cents in payment of work as the same progressed. On the same day the board of directors adopted similar resolutions. On November 3d, 1902, another meeting of the shareholders was held at which meeting resolutions were adopted by them reciting that twenty-five hundred shares should be voted to J. G. White & Company; at the meeting of August 26th, instead of the two thousand two hundred and forty-three shares, the board of directors were directed to issue two hundred and forty-eight additional shares of stock to J. G. White & Company. At the same meeting the board of directors were directed to enter into a contract with J. G. White & Company for the construction of a railroad recited to be in the course of construction and for fixing and preparing the park at Pickett Springs. On the same day the board of directors of the company adopted similar resolutions. In pursuance of the said resolutions the Montgomery Traction Company on November 3d entered into a contract with J. G. White & Company which recited that in consideration of the delivery of twenty-five hundred shares of the capital stock and two hundred thousand dollars of five per cent first mortgage bonds, par value, J. G. White & Company agreed to furnish all the labor and materials and perform all the work necessary to complete in a substantial and workmanlike manner the grading and construction and equipment of the line of the Traction Company in the city of Montgomery and the improvement of the Pickett Springs park in accordance with the specifications thereto annexed. On the 25th day of March, 1903, the shareholders and board of directors directed the execution of another contract with White & Company for the construction of additional lines which was executed on the same day. This contract recited in consideration of the issue of seven hundred and fifty shares of the capital stock and one hundred thousand dollars of its bonds, J. G. White & Company agreed to furnish all the labor and materials and perform all the work necessary to complete in a substantial and workmanlike manner the construction and equipment of such extensions in accordance with the specifications thereto annexed.

It is averred in the bill that the value of the work and labor done and material furnished by White & Company prior to August 26th, 1902, was of less value than one hundred thousand dollars, which fact it is averred was well known to the shareholders and the board of directors of the Traction Company and J. G. White & Company at the time of said meeting. It is further averred that this work and labor and material furnished together with all work and labor to be done and material to be furnished provided in the contract of date November 3d would not exceed in value the sum of one hundred and sixty-two thousand dollars, and that at the time the contract was executed this fact was also known by said shareholders and board of directors and said J. G. White & Company. It further appears from the bill that all the work and labor and materials specified under contract of March 25th, would not at the time the contract was entered into have exceeded the sum of eighty-one thousand dollars in value and that this fact was also known to White & Company, and the shareholders and directors of the Montgomery Traction Company. It further appears from the bill that it was never contemplated by White & Company, or the officers and directors of the Traction Company that all the work and labor to be done and material to be furnished by White & Company, should exceed in value the sum of two hundred and forty-three thousand dollars.

It appears from the bill that at the time the two contracts were entered into, J. G. White & Company, in addition to holding a large majority of the stock of the Traction Company upon which nothing had been paid, controlled its board of directors, by whom the execution of the contracts were authorized. Of the nine members of the board of directors of the Traction Company at the time of the execution of the contracts and who were elected by the vote of the stock subscribed for by J. G. White & Company, six were either attorneys or employees of J. G. White & Company, holding one share of stock each, subscribed for at the instance of J. G. White & Company and for its benefit. Of the nine members of the board of directors only two are shown not to have

been affected by this influence. The vice-president and treasurer of the Traction Company, were officers and shareholders of J. G. White & Company, and the president of the Traction Company its employee. Possessing this control of the Traction Company, the contracts between the two corporations must be regarded as if between a corporation and its directors or other trustees, and must be governed by the same principles.—2 Cook on Corporations, § 662. The courts will set such contracts aside unless they are fair and reasonable. In the case of *Memphis & Charleston Ry. v. Wood,* 88 Ala. 641, it is said: "Nothing can be more unjustifiable and dishonorable than an attempt on the part of those holding a majority of the shares in a corporation to place their nominees in control of a company and then to use their control for the purpose of obtaining advantage to themselves at the expense of the minority; it would be a conspiracy to commit a breach of trust. The directors of a corporation are bound to administer its affairs with strict impartiality, in the interest of all the shareholders alike, and the inability of the minority to protect themselves against unauthorized acts performed with the connivance of the majority, renders their right to the protection of the courts the clearer."

It appears from the bill that all the work and labor which had been done and material furnished bv J. G. White & Company for the Traction Company up to August 26, 1902, the day that two thousand two hundred and forty-three shares of the par value of one hundred dollars per share of the stock of the Traction Company was voted to J. G. White & Company, was of less value than one hundred thousand dollars; that the cost of all the work and labor to be done and material to be furnished under the first contract between the two companies of date November 3d, 1902, including all that had been done prior to August 26, 1902, would not exceed in value the sum of one hundred and sixty-two thousand dollars, and that this fact was known at the time said contract was executed by the board of directors of the Montgomery Traction Company and by J. G. White & Company. For this work and labor and material

averred to be of the value of one hundred and sixty-two thousand dollars, the contract of November 3d, 1902, provides that the Traction Company should pay two thousand five hundred shares of its capital stock of the par value of one hundred dollars a share, amounting to two hundred and fifty thousand dollars, and two hundred thousand dollars of its five per cent first mortgage bonds, a total consideration of four hundred and fifty thousand dollars, to J. G. White & Company. It further appears from the bill that the whole work and labor and material specified to be done or furnished by J. G. White & Company under the contract between the two companies of date of March 25, 1903, would not at the time the said contract was entered into have exceeded in value the sum of eighty-one thousand dollars, which fact was known to J. G. White & Company and the officers and directors of the Montgomery Traction Company. For this work and labor and material which the bill avers was not worth exceeding eighty-one thousand dollars, the contract of March 25, 1903, between the two corporations provides that the Traction Company should pay seven hundred and fifty shares of its capital stock of the par value of seventy-five thousand dollars and one hundred thousand dollars of its first mortgage bonds to J. G. White & Company, a total consideration of one hundred and seventy-five thousand dollars for eighty-one thousand dollars in value to be received by the Traction Company. Under the averments of the bill the two contracts were grossly unfair to the Traction Company, and the values of the work and labor to be done and material to be furnished by White & Company thereunder being knowingly excessive they were also in violation of the constitution and statutes prohibiting the fictitious issue of stock and bonds. The Traction Company, and hence the complainant (under the circumstances averred in the bill authorizing him to sue) is, therefore, entitled to have so much of the stock or bonds as represents the profit illegally obtained by White & Company cancelled, or to have the two contracts between the corporations set aside and all the stock and bonds provided for therein cancelled upon

payment for work and labor done and materials furnished thereunder.

The bill fails to aver that J. G. White & Company, a corporation, was authorized to subscribe for the stock, and this objection is made one of the grounds of demurrer. In the absence of this averment the right of a shareholder to compel the payment for stock either generally, or under the circumstances averred, is not considered. This averment, however, is immaterial in the aspects of the bill above sustained and as the demurrer goes to the whole bill it was properly overruled.

The bill shows that two hundred and forty-eight shares of the stock delivered to J. G. White & Company under said contracts had been transferred by it to W. H. Ragland with notice, and he is made a party defendant. Under these circumstances he was a proper party. Making him a party defendant does not render the bill multifarious, the object of the bill being single to all the defendants and the relief substantially the same.

The errors assigned by J. G. White & Company to the ruling of the court in refusing to set aside a decree *pro confesso* cannot be considered upon this appeal. An appeal from an interlocutory decree is only allowable by virtue of the statute and cannot be extended by the court to other interlocutory orders than those mentioned therein.—*Montgomery Iron Works Co. v. Capital City Insurance Company,* 137 Ala. 134.

It follows from what has been said that the demurrers and the motion to dismiss the bill for want of equity were properly overruled.

Affirmed.