[South & North Alabama Railroad Co. et al. v. Gray.]

# South & North Alabama Railroad Co., *et al.,* v. Gray.

## *Injunction.*

(Decided April 15, 1909.   49 South. 347.)

1. *Railroads; Sales; Regulation; Statutory Provision.*—Although a railroad company was incorporated under the constitution and laws previous to the provisions of the Constitution of 1875, yet, if such corporation by its acts and conduct brought itself within the provision of the Constitution of 1875, so as to enjoy the benefits of future legislation by accepting the provisions of the articile, it became subject to all the laws enacted relating to railroad corporations, and the stockholders estopped themselves from claiming that laws enacted subsequent to its charter, did not apply to it by their acquiesence in the conduct of the corporation; hence, statutes subsequently enacted permitting a sale of a railroad by a majority of its stockholders was applicable to such railroad corporation.

2. *Same.*—Section 12, Acts 1902, p. 321, is applicable to an attemptd sale by a railroad company of its property, stock, etc., to another company, after the enactment of the statute, since section 54, thereof is not sufficient to prevent a repeal by said act of the then existing laws.

3. *Same; Consent by State.*—Section 3495, Code 1907, is merely declaratory of the common law and operates as a consent by the state for the sale by one railroad company to another of its franchise, which consent is essential to the sale of a franchise of a public service corporation, where its charter does not authorize its sale.

4. *Same; Sale of Minority Stock.*—Construing sections 3497-8, Code 1907, in the light of section 238, Constitution 1901, and in view of the property rights guaranteed by the state and Federal Constitution, it is held that those sections did not authorize tue directors of a corporation with the assent of the majority of its stockholders to sell the stock of a minority stockholder, without his consent; and that sections 502 and 503, Code 1907, were not applicable to justify such a sale, and hence, the directors and majority of stockholders will be enjoined at the suit of the minority stockholder, from voting a sale of his stock.

5. *Same; Injunction.*—Where the selling company was largely indebted to the other company, and there was a suit then pending for an accounting between them, and it appeared that if the selling company was allowed proper credits, its indebtedness would be greatly reduced, and the only consideration for the contemplated sale was the assumption by the purchasing company of the existing indebtedness of the selling company, and it would therefore, be impossible to determine whether the consideration for the sale would be adequate until an accounting was struck, the sale will be enjoined pending a final determination of the suit for an accounting.

32—160

[South & North Alabama Railroad Co. et al. v. Gray.]

6. *Same; Injunction.*—Since the minority stockholders have the right to set aside or enjoin its consummation, if it prove fraudulent or oppressive, the majority stockholder will not be enjoined from voting for a sale of the road under the facts as made in this case.

7. *Equity; Relief; Prayer.*—Where the bill showed that the complainants were entitled to relief, and it contained a general prayer for relief, the enjoining of the voting for a sale of the minority stockholders might be granted as not inconsistent with the main purpose of the bill, although there was no special prayer directed to that end.

8. *Corporations; Stock; Right to Vote.*—As a general rule the owner of stock in a corporation may vote his stock as he pleases so long as it is not voted for the purpose of oppressing or defrauding minority stockholders.

9. *Abatement and Revival; Another Action Pending; Concurrent Jurisdiction; Parties.*—Where a suit had been instituted by the directors of a corporation, on the demand of a stockholder, for an accounting against another corporation which was operating it, and the court in which such suit was commenced had acquired jurisdiction of the subject matter, and the parties necessary to the relief demanded, the stockholders, though not a party to the suit, cannot maintain a bill for similar relief in another court of concurrent jurisdiction, and have a receiver appointed.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by Henry B. Gray against the South & North Alabama Railroad Company and others to enjoin the sale of its road, etc. From a decree for complainant, defendants appeal. Affirmed in part and reversed and rendered in part, and injunction modified.

The Louisville & Nashville Company, a foreign corporation, owned a majority of the stock of the South & North Company, and the two roads had been operated as a continuous line for a number of years; the former having floated bonds for the latter company to enable it to extend its line and continue operations.

FRED S. BALL, and WALKER PERCY, for appellants, S. & N. A. R. R. Co. GREGORY L. SMITH, H. L. STONE, TILLMAN, GRUBB, BRADLEY & MORROW, GEORGE W. JONES, and J. MANLY FOSTER, for appellants, L. & N. R. R. Co.—A chancery court cannot

take jurisdiction of a matter already pending before another chancery court of this state.—*Gray v. S. & N. A. R. R. Co.*, 43 Sou. Rep. 859. A stockholder cannot maintain a suit on behalf of his corporation without first having made a demand upon the corporation to bring the suit and the refusal of that corporation, or without making a proper showing that such a demand would be useless.—*L. & N. R. R. Co. v. Neal*, 128 Ala. 149; *Decatur v. Palmer*, 113 Ala. 531; *Hawes v. Oakland*, 104 U. S. 450. Whenever one party does an act at the request, or upon the demand, of another, the other is estopped from denying the right to do the act.—*McGhee v. Drisdale*, 111 Ala. 600; *Robins, Fry and Company v. Wooten*, 128 Ala. 376; *Kahn v. Peters, Admr.*, 104 Ala. 528; *Fields v. Killon*, 129 Ala. 373; *Goetter, Weil & Co. v. Harmon Bros.*, 107 Ala. 586; *Lehman, Durr & Co. v. Clark*, 85 Ala. 109; *Caldwell v. Smith*, 77 Ala. 165; *Dickson v. McLarney*, 97 Ala. 383; *Hendricks v. Kelly*, 64 Ala. 391. A railroad company, whatever may be its charter, has the right to sell its property and franchises under Sections 1169, 1170 and 1171 of the Code of 1896 (Sections 3497, 3498 and 3499 of the Code of 1907). The fact that the South and North Alabama Railroad Company has allowed the Louisville & Nashville Railroad Company to operate its property under an arrangement with its directors for a great number of years raises the presumption that the provisions of 1169 and 1170 of the Code of 1896 and, therefore, the provisions of the Constitutions of 1875 and 1901, have been accepted by it.—*L. & N. R. R. Co. v. State*, 45 Sou. 303. The fact that the directors were elected by the vote of the stock of a corporation holding a majority of the capital stock of the corporation in which the directors were elected does not show that the directors are not representing their corporation in good

faith.—*Decatur Mineral Land Co. v. Palm,* 113 Ala
539; *Potter v. Pittsburg Bessemer Steel Co.,* 130 U. S.
670. Allegations that directors are under the domina-
tion and control of a corporation are merely allegations
of conclusion and not of fact.—*Neil v. L. & N. R. R. Co.,*
128 Ala. 150. A stockholder in a corporation has the
right to vote his stock as he pleases wisely or unwisely,
for the benefit of the company or against it.—*Moses v.
Scott,* 84 Ala. 611. A foreign corporation has the stat-
utory right to vote its stock in a domestic corporation.—
Code 1907, Sec. 3640. A stockholder in a corporation
also has a statutory right to have that corporation sell
its property to another corporation.—Code 1907, Secs.
3496, 3498. One person may act as the agent of two
others in their dealings between themselves with the
consent of both parties.—*Fitzsimmons v. Sou. Express
Co.,* 40 Ga. 336; *O'Connor Mining & Mfg. Co v. Coosa
Furnace Co.,* 95 Ala. 617. The acts of an agent acting
for both parties to a transaction are voidable only and
not void ab initio.—*Mobile Land and Imp. Co. v. Gass,*
142 Ala. 520; *Corey v. Wadsworth,* 118 Ala. 504. Courts
cannot deny the rights of parties because in the use of
such rights an opportunity is afforded for deceiving the
court or perpetrating a fraud.—*Corey v. Wadsworth,*
118 Ala. 505. The court will restrain the holder of a
majority of the capital stock in a corporation from vot-
ing that stock for the purpose of oppressing or defraud-
ing the minority stockholder, but a court will not re-
strain such holder of a majority of the stock from other-
wise exercising its rights as a stockholder.—*Davis v.
United Electric & Power Co.,* 77 Md. 35; *Transporta-
tion Co. v. Beatty,* 12 App. Cases 559; *Gambell v. Water
Company,* 123 N. Y. 91 (25 N. E. 201); *Bjorngaard v.
Goodhue County Bank,* 52 N. W. 48; *Montgomery Trac-
tion Co. v. Harmon,* 140 Ala. 520. This case when shorn

of the accounting feature makes out no case for the appointment of a receiver pendente lite.—*Gray v. S. & N. A. R. R. Co.*, 43 Sou. 859. A receiver cannot be appointed except pendente lite.—*Micou v. Moses*, 72 Ala. 440; *Meyers v. Johnson*, 50 Ala. 335; *Bank of Florence v. U. S. Savings and Loan Assn.*, 104 Ala. 299; *Overton v. Memphis & Little Rock R. R. Co.*, 10 Fed. Rep. 866; *Myers v. Thomas*, 113 Ala. 11; *Etowah Mining Co. v. Wills Valley Mining Co.*, 106 Ala. 496; *Bridgeport Development Co. v. Tritsch*, 110 Ala. 287.

PHARES COLEMAN, and S. H. DENT, JR., for appellees. The averments of the bill show that the complainant was entitled to maintain the bill and, therefore, the demurrer to the bill as a whole, and each averment thereof was properly overruled.—*George v. Cent. R. & B. Co., of Ga.*, 101 Ala. 608; *M. & C. R. R. Co. v. Wood*, 88 Ala. 630; *Decatur M. L. Co. v. Palm*, 113 Ala. 531; *Bridgeport Dev. Co. v. Tritsch*, 110 Ala. 264; *Steiner v. Parsons*, 103 Ala. 215; *Roman v. Woolfolk*, 98 Ala. 219; *American Co. v. Lynn*, 93 Ala. 612. The complainant seeks protection as a stockholder from the illegal acts of his own company through its directors and others, from a settlement upon a ruinous basis.—*E. T. V. & G. R. R. Co. v. Grayson*, 119 U. S. 240; *Cent. R. R. Co. of N. J. v. Mills*, 113 H. S. 249. The appointment of a receiver is proper when the welfare of various interests demand it.—Beech on Receivers, secs. 339 and 344; 24 A. & E. Ency of Law, 4; 27 Hun. 584; 22 Blatch, 72. The effect of the appointment of a receiver of a railroad company is not to dissolve the corporation, but to direct its management under orders of the court.—115 Ill. 52; 37 Ohio St. 251; *Myer v. Johnson*, 53 Ala. 237; *Tilley v. Trustees*, 58 Ala. 489; *Roman v. Woolfolk, supra*. As to when a receiver for a railroad will be

appointed, see.—98 Am. Dec. 692; 50 N. H. 200; 2 Woods, 323; 56 Fed. 909. Although the appointment of a receiver at the instance of a minority stockholder is a drastic remedy, a court of equity will make such an appointment when it plainly appears that there has been such fraud or mismanagement on the part of the officers and directors as works manifest oppression and wrong to such stockholders.—Beach on Receivers, Sec. 424, pp. 460-462; 23 Amer. & Eng. Wnc. Law, pp. 1023 et seq.; *Roman v. Woolfolk,* 98 Ala. 219; *Davis v. U. S. El. Pow. & L. Co.,* 77 Md. 35; *Hand v. Dexter,* 41 Ga. 454; *Haywood v. Lincoln Lum. Co.,* 64 Wis. 45; *Rathbone v. Parkersburg Gas Co.,* 31 W. Va. 798, where directors tried to change situs of corporation, failed to keep books, etc., and receiver was properly appointed; *Blatchford v. Roos,* 54 Barb. 42; s. c. 34 How. Pr. 110; *Morris v. Elyton Land Co.,* 125 Ala. 263, 279; *Elyton Land Co. v. Dowell,* 113 Ala. 177; See also *Rothwell v. Robinson,* 44 Minn. 528; *B. & O. R. R. Co. v. Cannon,* 72 Md. 493; *Ranger v. Champion Cotton Press Co.,* 52 Fed. Rep. 609; *Flukes v. Emporia City Ry. Co.,* 48 Kan. 577; *Mason v. Pewabic Mining Co.,* 133 U. S. 63; as to strictness of rule, and also Beach on Receivers, Sec. 424, p. 464; *Greaves v. Gonge,* 69 N. Y. 154; *Brewer v. Boston Theater,* 104 Mass. 378; *Hawes v. Oakland,* 104 U. S. 450; *Clark v. Nat. Linseed Oil Co.,* (C. C. A.), 105 Fed Rep. 787. A receiver will be appointed where it is made to appear that there is such fraud or maladministration that the business of the corporation can not be carried on honestly and to the best interests of its stockholders. The receivership, however, is limited in time and extent, as the circumstances will allow.- -3 Cook on Corps. (5th Ed.) Sec. 746, pp. 1919-21; *Davis v. U. S. El. etc. Co.,* 77 Md. 35, where one company controlled the other; *Miner v. Belle Isle Ice Co.,* 93 Mich. 97, 17th L. R. A. 412;

*Sternchberg v. Wolff,* 56 N. J. Eq. 555, 389; *State. v. Boston, etc. Co.,* 22 Mont. 220, 241, where all the property of the company is sold; *Jasper, etc., Co. v. Wallis,* 123 Ala. 652; *Cameron v. Groveland Co.,* 20 Wash. 169; *Sincer v. Alverson,* 51 La. Ann. 955; *McGilliard v. Don aldsonville, etc. Co. Works,* 104 La. An. 544; *Becker v Gulf City, etc. Co.,* 80 Tex. 475; where there had been illegal consolidation of the railroad; *Aikin v. Col. River Irr. Co.,* 72 Fed. Rep. 591; *Bridgeport Dev. Co. v. Tritsch,* 110 Ala. 274; *Stewart v. Belt,* 19 Sou. Rep. 957; *State v. District Court,* 15 Mont. 324; See especially, *State ex rel. Ind. Dist. Tel. Co. v. Second Judicial Dist. Co. of Silver Bow Co.,* 15 Mont. 324; 27 L. R. A. 393; *Re Lewis,* 52 Kan. 660. The fact that the equipment of a railroad is insufficient to enable a receiver to operate it does not constitute an objection to the appointment of a receiver for the road.—Alderson on Receivers, p. 371, end of Sec. 284; *Ball v. Maysville & Big Sandy R. R. Co.,* 43 S. W. Rep. 731. Where corporate property has been sold or is about to be sold, a dissenting minority stockholder can maintain a bill of injunction to have set aside the sale made or prevent the making of the sale. A stockholder cannot be forced to part with his stock or to take a fixed price by the majority.— *Morris v. The Elyton Land Co.,* 125 Ala. 263, 275-277; *Elyton Land Co. v. Dowdell,* 113 Ala. 177; *Forrester v. Boston M. C. & S. Co.,* 10 Amer. & Eng. Corp. Cases 39, 62; *Kean v. Johnson,* 9 N. J. Eq. 401; *Mills v. R. R. Co.,* 41 N. J. Eq. 1; *Abbot v. Rubber Co.,* 33 Barb. 578; *People v. Ballard,* 134 N. Y. 269; *Byrne Schuyler M. & E. Co.,* (Conn.) 28 L. R. A. 304; 65 Conn. 336; *Mason v. Pewabic Min. Co.,* 133 N. S. 50; *Stevens v. R. R. Co.,* 29 Vt. 545; *R. R. Co. v. Collins,* 40 Ga. 582; *N. O. J. & G. N. R. R. Co. v. Harris,* 27 Miss. 517; *City of Knoxville v. R. R. Co.,* 22 Fed. Rep. 578; 2 Cook on Corp. (5th

[South & North Alabama Railroad Co. et al. v. Gray.]

Ed.), Secs. 696, et seq.; See *T. L. & T. Co. v. N. Y. & North Rwy.*, 150 N. Y. 410; *Niles v. N. Y. Central R. R. Co.*, 176 N. Y. 119. In the absence of statutory authority, a railroad company cannot sell or lease its franchise. —27 Amer. & Eng. Enc. of Law, pp. 270, 780, and notes; *Central Transp. Co. v. Pullman Palace Car Co.*, 139 U. S. 29; *Branch v. Jessup*, 106 U. S. 468; *Thomas v. W. Jersey R. Co.*, 101 U. S. 71; *McIntosh v. Flint, etc., Co.*, 34 Fed. Rep. 582; *Hamilton v. Savannah, etc., R. Co.*, 49 Fed. Rep. 412; *Stevens v. R. & B. R. R. Co.*, 29 Vt. 545. Sale or transfer of franchise, without statutory authority, authorizes dissolution of company.—23 Amer. & Eng. Enc. p. 684.

The majority of the stockholders in a railroad corporation cannot, against the objection of the minority, divert the company's property from the purpose of its creation. One corporation cannot absorb another by purchasing its stock.—Hirschel on Comb. Consol., Etc., of Corps., pp. 26, 40; *McIntosh v. Flint & P. Co.*, 34 Fed. Rep. 582; *Black v. Delaware & Raritan Canal Co.*, 24 N. J. Eq. 455. The consolidation of two companies, or the purchase of one company by another is invalid, unless there is unanimous consent of all of the stockholders, although there may be legislative authority. A single stockholder can, by injunction, prevent its consummation. Neither the other stockholders or the legislature have the power to change the contract under which he became a member or to compel him to take stock in another company or to part with his stock.—Hirschel on Comb., Consol, & Suc. of Corps, pp. 331, 339, 340, 341. The surrender of the property and the functions of a corporation in order that, while it is still to continue in existence, its business is to be carried on by another corporation, to which such transfer is made, would violate the rights of a non-assenting stockholder arising from

the contract, implied if not expressed, in the creation of such corporation.—Hirschel C., C. & S. of Corps., pp. 341, 342; Morawitz on Corps., Secs. 413, 416; Stewart v. Transp. Co., 17 Minn. 372, 398; Cook on Stock, etc., Secs. 667, 668; *Block v. Canal Co.*, 24 N. J. Eq. 456; *Zabriskie v. R. R. Co.*, 24 N. J. Eq. 178; *Abbot v. Rubber Co.*, 33 Barb. 578; *Middlesex R. Co. v. Boston & C. R. Co.*, 115 Mass. 347. Minority can prevent control over their company by rival company owning a majority of former's stock.—Hirschel C., C. & S. of Corps., p. 342 and notes; *M. & C. R. R. Co. v. Wood*, 88 Ala. 630. The proposed sale if not authorized by an act of the legislature is ultra vires, and would be void.—*Elyton Land Co. v. Dowdell*, 113 Ala. 177; *Morris v. Elyton Land Co.*, 125 Ala. 263, 276. The charter of the South & North Alabama Railroad Co. is a contract between the state, the corporation and the shareholders, and its obligations cannot be impaired.—*Dartmouth College Case*, 4 Wheat. 700; *Penn College Cases*, 13 Wall. 212; 6 Amer. & Eng. Enc. Law, 805. The charter of the South & North Alabama Railroad Company was granted in 1854 and there has been no amendment accepted by the company since 1875. Hence Section 1 of Art. XIV of the Constitution of 1875, now section 238 of the Constitution of 1901 and Sec. 22 of Const. of 1901 are not applicable.

An act which a corporation cannot itself do in the first instance, can not itself be validated by its subsequent ratification.—4 Thomp. on Corp., Sec. 5277-9; Id. Sec. 5968; *Seiner v. Steiner Land Co.*, 120 Ala. 128, 139. The purchase or acquisition of the stock in the South & North Alabama Railroad Co. by the Louisville & Nashville Railroad Co. was unauthorized by law, and is therefore invalid.—See Code of 1876, Sec. 301; Code of 1886, Sec. 1886; Code of 1896, 1170.

ANDERSON, J.—While the South & North Company was incorporated prior to the Constitution of 1875, and under the law then existing its franchise, etc., could not be sold, except by the consent of the state, it being a public service corporation, and then only with the consent of all the stockholders, yet it had been held, and properly so, that said corporation had by its acts and conduct brought itself within the influence of the Constitution of 1875, and has rendered itself amenable to all laws enacted by the state with reference to corporations of its character, and that the stockholders have acquiesced in the conduct of the corporation in bringing itself within the influence of the Constitution of 1875 to the extent of estopping themselves from setting up that the laws of the state subsequent to its charter or amendments thereto do not apply to same.—*L. & N. R. R. Co. v. Gray,* 154 Ala. 156, 45 South. 296; *State v. Montgomery Light Co.,* 102 Ala. 594, 15 South. 347. The bill was filed subsequent to Acts 1903, p. 310, and the action on the part of the directors of the respective companies, looking to a purchase of the South & North and the stock of the minority, and which is now complained of, was also subsequent to said act, and, as it specially provides for the thing attempted, it applies to these corporations in this particular and a repeal of existing laws on this subject was not prevented by section 54, as all railroads were included in so far as section 12 applies.—*Palliser v. Home Telephone Co.,* 152 Ala. 440, 44 South. 575. As the act in question is contained in the Code of 1907, we will, for convenience, cite the sections of the Code in discussing the questions involved.

Section 3495 of the Code of 1907 (section 1169 of the Code of 1896) authorizes a sale by one railroad company to another of its franchise, railroad, etc., when the purchasing company owns all of the capital stock of the sel-

ling company. This section is no more than a consent by the state, which is essential to a sale of the franchise, etc., of a public service corporation, when the authority to do so was not given in the charter. It is but the consent of the state to a sale, which would be authorized, regardless of our Constitution, and is but declaratory of the common law, which authorizes a sale of the franchise etc., with the consent of all the stockholders, provided the state is willing, in case it is a public service corporation. If the purchasing corporation owns all the stock in the selling one, then no one but the state can complain. Section 3497 of the Code of 1907 says: "Any corporation may purchase at judicial sale, or otherwise, hold and use or lease any part or all of the railroad constructed by another corporation or company, together with its franchises, rights, and property, or may acquire, hold, and use all or any part of the capital stock of another corporation chartered under the laws of this state or any other state, if the railroad or railroads so purchased connected with, or will, when completed, connect with the railroad works, factory, or plant of the purchasing or leasing corporation, either directly or by means of an intervening line; or any two or more such companies whose lines are or will be, so connected, may enter into any arrangement for their common benefit, consistent with and calculated to promote the objects for which they were created." Section 3498 of the Code says: "But no such aid shall be furnished, nor any such purchase, lease, or arrangement perfected as in the preceding sections mentioned, until a meeting of the stockholders of each of such corporations has been called by the directors thereof, at such time and place and in such manner as they shall designate, and the holders of the larger amount in value of the stock of each of such corporations represented, and by voting at meeting, in per-

son or by proxy, shall have assented thereto, and copies of the proceedings of such meetings certified by the president, or other managing head of such corporations, under the corporate seal, shall be filed in the office of the Secretary of state." While section 3497 authorizes among other things one corporation to acquire, hold, and use all or any part of the capital stock of another corporation, section 3498, prescribing how purchases shall be made, applies only to the purchase of corporate property, and not to the acquirement of stock issued by a corporation and held by another. It is true section 3497 authorizes one corporation to acquire and own the capital stock of another, whether owned by an individual or not, but it could not have been the legislative intent to require the owner of stock in a corporation to sell his stock to another corporation upon the assent of a majority of the stockholders at a meeting called by the directors. Consequently purchases, leases, and arrangements, as provided for in section 3498, applies only to property owned and controlled by the selling corporation, and not to its stock held by another. Therefore, construing these two sections together and in connection with the property rights guaranteed by both state and federal Constitutions, it was not thereby intended to divest a stockholder of his property without his consent upon the mere action of the directors after obtaining the asset of the majority of the stockholders. Not only are sales, etc., under section 3498 confined to property at the time owned by the corporation, but said sales are authorized only when no injustice will be done the stockholders. The legislature derived its authority to delegate this right to corporations because of the Constitution, and for the further reason that this particular corporation became subject thereto, for the reasons set forth in the Gray

Case, supra. And this statute must be read in connection with section 238 of the Constitution of 1901, and so as to harmonize therewith, and should, therefore, have read into it the following proviso: "That no injustice shall be done the stockholders."

A reading of the resolution set out in the bill of complaint would indicate that the directors started out in their negotiations under one statute and wound up under another one. The first resolution would indicate an offer or proposition looking to a merger or consolidation as authorized by sections 3502, 3503, Code 1907. They then received a counter proposition from the Louisville & Nashville Company, looking to a purchase, not only of the corporate property, but the minority stock as well. This offer was doubtless made by the Louisville & Nashville Company upon the assumption that they not only had the right under section 3497 to purchase, but that the directors had the same right to sell stock held by individuals, under section 3498, as they had to sell the corporate property proper. The directors of the South & North accepted the proposition, with the qualification that the price offered for the minority stock be increased from 20 to 27 1-2 cents per share and agreed to convey the roadbed, franchise, etc., subject to the approval of the "stockholders." As to whether or not they meant all stockholders, a majority of all stockholders, or a majority of the minority stockholders we cannot tell, but, inasmuch as they were attempting to proceed under section 3498, we must assume that they meant to convey upon the assent of the holders of the larger amount of stock. It is true the resolution requires certain things of the Louisville & Nashville Company, the assumption of the debt and the purchase of the outstanding stock, but the obtaining of this stock was not a condition precedent to the conveyance, as they agreed to execute the

conveyance so soon as the proposition was accepted, and the things required of the Louisville & Nashville Company was the assumption of the indebtedness and the payment to the stockholders for their shares, not before the conveyance, but upon the delivery to it, by each shareholder of his certificate of stock, properly indorsed. Of course, if they meant to convey the property only after the Louisville & Nashville had acquired all of the stock, no one can complain. It is manifest, however, that they were attempting to proceed under section 3498, and intended, not only to convey the property upon the approval of the majority at the meeting called for March 21, 1905, but that they would also procure a vote on the sale of the minority stock for the price previously fixed. It is true that no price was fixed on the property of the South & North Company, but a conveyance was contemplated, in case a majority voted for same, and the only consideration for said conveyance was the assumption of the indebtedness of the South & North Company and the payment to the stockholders of 27 1-2 cents per share for their stock, when surrendered. The whole thing looks like a move, not only to acquire the property of the South & North Company, but the stock of the minority as well and at a price fixed by the directors, subject to the approval of the larger owners of stock, and which said larger amount is owned by the purchasing company. We do not mean to impugn the motives of the directors or to hold that they were attempting to assist the Louisville & Nashville in improperly acquiring the minority stock. They evidently thought they had the authority, under the statute, to do what they did, as it requires judicial discernment to discover that sales provided by section 3498 do not cover stock held by others than the corporation. Moreover, the fact that they voluntarily raised the bid of the Louisville & Nashville, is a circum-

stance indicating that they were not the tools of or acting solely in the interest of said company. The directors had no authority under the law to inaugurate a plan looking to a sale of the minority stock at a valuation fixed by them or otherwise. Nor did the Louisville & Nashville Company or any other stockholder have the right to vote for the sale of the complainant's stock for a price fixed by the directors or otherwise, and the complainant is entitled to injunctive relief to prevent such unauthorized interference with his property by the directors or any of the stockholders of the South & North It is true there is no special prayer to prevent the voting for a sale of complainant's stock or the interference therewith, but the bill makes out a case for relief, and contains a general prayer, and the granting of this relief would not be inconsistent with the main purpose and equity of the bill. There is no demurrer, however, questioning this feature of the bill, and we only allude to it in discussing the general equity of the bill and as an incident to the construction of sections 3497 and 3498 of the Code, and because the directors seemed to think they had the right, under the latter section, to sell the stock owned by individuals as well as the corporate property proper.

The bill also sets out facts indicating that a sale of all of the corporate property is contemplated by the directors, and, as amended, prays that they be enjoined from making said sale or any other sale until the ascertainment by an accounting of the status of the company. It is charged that the Louisville & Nashville Company is largely indebted to the South & North Company, and that a bill is now pending in the chancery court of Jefferson county for an accounting between said corporations, and that, if the South & North gets the proper credits, its indebtedness will be reduced. The

only consideration contemplated for the sale seems to be the assumption by the Louisville & Nashville of the existing indebtedness of the South & North, and it would be impossible to determine whether or not this will be adequate until the affairs of the company are ascertained and fixed by a proper accounting. We think the bill contains equity in so far as it seeks to enjoin the directors from making a sale of the properties of the South & North Company before the case involving an accounting, and now pending in the Jefferson chancery court, is finally determined. The action of the directors looking to a conveyance of the property of the South & North and the sale of the shares of the minority stockholders cannot be justified under sections 3502 and 3503 of the Code of 1907, as there is nothing to indicate a merger or consolidation of the two corporations under the terms of said sections. If they contemplated a consolidation, section 3503 requires first an offer of stock in the new consolidated company and not the valuation and attempted force sale of the old stock. If the stockholder does not accept said stock, the statute provides the method of ascertaining the value of same, but whether or not the appraisement provided can afford a proper method of ascertaining the value owing to the averment of long continued and unsettled transactions, and a court of equity alone can do this, we need not decide, as this question is not presented.

The next and most serious question presented is involved in the third and sixth prayers of the bill, wherein the Louisville & Nashville Company and the directors of the South & North Company are asked to be enjoined from voting their stock for a sale of the property of the South & North, and, further, that the Louisville & Nashville Company be enjoined from voting its stock to elect any of its officers in the South & North Company, and

[South & North Alabama Railroad Co. et al. v. Gray.]

that it be "enjoined perpetually from operating and enjoying the use of the property of the South & North Company." As a rule, a stockholder in a corporation has the right to vote his stock as he pleases.—*Moses v. Scott*, 84 Ala. 611, 4 South. 742. The statute authorizes him to do so in cases covered by section 3498 of the Code. Indeed, the directors cannot avail themselves of the statute, except with the approval of a majority of the stockholders, and it would be absurd to authorize a thing done with the approval of the stockholders and at the same time deny them the right to vote; and majority stockholders should have the same right to vote their stock as is enjoyed by the minority. Again, section 3640 of the Code of 1907 expressly authorizes foreign corporations to purchase, own, and vote stock in other corporations, provided it is so authorized by its own charter to do so. Of course, there is an exception to the rule, and courts will restrain the holder of a majority of the capital stock in a company from voting that stock for the purpose of oppressing or defrauding the minority stockholders, but the courts will not restrain such holder of a majority of the stock from otherwise exercising his rights as a stockholder.—*Davis v. Electric Co.*, 77 Md. 35, 25 Atl. 982; *Gambell v. Water Co.*, 123 N. Y. 919, 25 N. E. 201; 9 L. R. A. 527; *Montgomery Traction Co. v. Harmon*, 140 Ala. 520, 37 South. 371. The statute (section 3641 of the Code of 1907) further prevents the voting of stock for the creation of a trust or monopoly. As we have heretofore said, the stockholders had no right to vote their stock in favor of the sale of another's stock. We do not see, however, why they should not be permitted to vote for a disposition of the corporate property as authorized by the statute. If what they vote for should, when consummated, prove injurious to the stockholders, they have the right to

33—160

prevent the consummation of same by the directors, even if a majority of the stockholders should vote for same, or to set the sale aside if fraudulent or oppressive.

In the case of *M. & C. R. R. v. Woods,* 88 Ala. 630, 7 South. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81, the exception, as to a stockholder's right to vote, was somewhat broadened to meet the exigencies of the particular case, and the writer confined what was there said to cases of that character, and the soundness of said case need not be questioned, as we do not think that the averments of the bill in the case at bar bring this case directly under the influence of the Woods Case, supra. There we had two live going railroads, each operating in a separate, independent, and, possibly, antagonistic manner. One company acquired a bare majority of the stock of the other, and, as the bill averred, was proceeding in effect to wreck the one and build up the other, and the bill sought to prevent this scheme in its incipiency. There had been no joint and harmonious operation of the two as connecting lines for a period of 30 years by and with the assent of the stockholders. It does not appear that the E. T. V. & G. went to the rescue of the M. & C. before its completion and equipment, and lent its aid and credit in the floating of bonds and in the rehabilitation of a struggling and tottering connecting line. It is true the bill in the case at bar avers that these bonds floated by the Louisville & Nashville, and the proceeds therefrom have been misapplied; that the rolling stock of the South & North has been converted and wasted; and that the earnings have been diverted from their proper channel. The bill in the Woods Case sought to prevent the commission of expected wrong. The damnifying deeds charged in the present bill have been committed, and injunctive relief can be of little avail, as the complainant's redress must be ob-

tained by an accounting, and not by silencing and fettering over 90 per cent. of the stockholders by excluding them from participating in the management of the road in the future or pending the litigation. In other words, we are called upon to in effect either turn this road over to less than 10 per cent. of the shareholders or place it in the hands of a receiver; for such would be the result if the owners of over 90 per cent. of the stock are restrained from voting their stock in and about the management of the road. Courts will not permit majority stockholders to defraud and oppress the minority. Neither will they permit themselves to be used by minorities to hamper and fetter majority owners in public service corporations in the absence of a proper showing that irreparable injury will be done the minority. The things complained of have been done, and continued through many years, and can only be remedied by a proper accounting, and there is no averment that the recipient of the fruits is insolvent and cannot respond to any decree against it in favor of the injured corporation. It is true the bill avers a purpose to continue the diversion of the revenue and assets of the South & North Company, but, in the absence of an averment of the insolvency of the Louisville & Nashville Company, taken in connection with the fact that the continued operation of the two lines in harmonious accord for so many years without let or hindrance on the part of the stockholders, and now only by a very small portion, who have not yet received the support of others, notwithstanding they have been invited to join in the suit, would make it unwise and perhaps hazardous in the extreme to attempt so great an experiment as to change or fetter for the present the control and management of this great enterprise.

The facts in the case of *George v. Central R. R. Co.,* 101 Ala. 607, 14 South. 752, are not analagous to those

in the case at bar. There the Central Company held a majority of the stock of the Girard Company, acquired it for the purpose of getting the management of a competing line, and to, in effect, create a monopoly. Moreover, the opinion stresses the point that the act done or attempted was forbidden by the Constitution of Georgia; the state granting the respondent's charter. So much of the bill as seeks an acounting and the appointment of a receiver was construed adversely to the complainant upon the former appeal.—*Gray v. South & North R. R.,* 151 Ala. 215, 43 South. 859, 11 L. R. A. (N. S.) 581, and note. Upon that authority we hold that the city court erred in not sustaining the motion and demurrers of the respondents to so much of the bill as proceeded upon the theory of an accounting and receiver.

As indicated above, the bill contains equity and the injunction was properly granted, in so far as it sought to enjoin the stockholders from voting for a sale of the stock of said company. The injunction was improper in so far as it extended to any other acts, and is hereby modified so as to conform to this opinion.

The decree of the city court is affirmed, in so far as it upheld the equity of the bill, and the injunction was properly granted, in so far as it enjoined the directors from selling the South & North property, and should have restrained all stockholders from voting to sell complainant's stock or otherwise interfering with same. And the decree is reversed in so far as it overruled the motion and demurrers to the accounting feature of the bill, and so much as sought the appointment of a receiver, and one is here rendered sustaining same.

Affirmed in part and reversed and rendered, and injunction modified.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.