MISSISSIPPI AND MISSOURI RAILROAD COMPANY *v.* CROM-
WELL.

A court of equity is not bound to shut its eyes to the evident character of a
transaction where its aid is sought to carry into effect an unconscionable
bargain, but will leave the party to his remedy at law.

APPEAL from the Circuit Court of the United States for the
District of Iowa.

. The facts are stated in the opinion of the court.

Submitted by *Mr. George G. Wright* and *Mr. R. P. Lowe* for
the appellant, and by *Mr. John N. Rogers* for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The bill in this case was filed in the court below by the ap-
pellee, Cromwell, against the appellants, the Mississippi and
Missouri Railroad Company, and Muscatine County, of the
State of Iowa, to compel the former to transfer to the com-
plainant on its books, and to issue to him a certificate for, seven-
teen hundred and fourteen shares of its capital stock standing
in the name of Muscatine County, which stock the complain-
ant claims to have purchased at an execution sale made by the
marshal of the United States for the District of Iowa.

It is conceded that one James F. Harrison of New York, in
October, 1867, recovered a judgment in the Circuit Court of
the United States for the District of Iowa against Muscatine
County, for $6,500, upon the coupons attached to certain bonds
issued by that county in 1854, being a portion of $150,000 of
bonds issued in payment of its subscription for said stock; and
that under an execution on said judgment in October, 1868, the
marshal assumed to levy on said stock, and on the 23d of De-
cember, 1868, sold the same at public auction in the city of
Des Moines; and that the complainant, Cromwell, became the
purchaser for the sum of $50; and that the marshal executed
to him a bill of sale accordingly.

The appellants question the validity of the levy made by the
marshal, on the ground that the stock was not located in Iowa,
but in the city of New York, and could not be levied on in the
district of Iowa. Without attempting to decide this point, we

will proceed to the examination of other grounds of defence more directly bearing upon the title to equitable relief.

The certificates of the stock had been deposited, in June, 1866, with the Union Trust Company in the city of New York, in pursuance of an agreement by which the stockholders and bondholders of the Mississippi and Missouri Railroad Company had arranged for a formal judicial sale of the railroad of said company under the foreclosure of a mortgage to the Chicago, Rock Island, and Pacific Railroad Company. By this agreement, the stockholders consenting and depositing their stock as aforesaid were to receive sixteen per cent of the par value thereof, either in money or in the bonds of the Chicago, Rock Island, and Pacific Railroad Company; making the amount to be received by the county of Muscatine for its stock about $27,400, with interest from Dec. 1, 1865. The deposit of the stock held by the county under this arrangement entitled it to this sum. In this state of things, certain creditors of the railroad company (including said Harrison) filed a bill in the Circuit Court of the United States for the District of Iowa, claiming that the arrangement was a fraud on their rights, and that the sixteen per cent which the stockholders had stipulated for ought to be given up to them in payment of their demands as far as it would go for that purpose. This claim was sustained by the court; and a decree to that effect was made in May, 1868, before the issuing of Harrison's execution under which the stock was sold. The total amount of the sixteen per cent reserved to the stockholders, after deducting their share of the expenses, was $541,000; and the total amount of the claims of creditors, to which the money was by the said decree appropriated, was nearly $800,000,—more than sufficient to absorb the whole of it.

Now, as the stock of the Mississippi and Missouri Railroad Company, by the foreclosure and sale of all its property under the mortgage, had become completely valueless, if it had not ceased to exist for any purpose except the perception of the sixteen per cent before mentioned, and as that sixteen per cent was also entirely absorbed and taken away by the outside creditors of the company under this decree, it would appear that the subsequent levy on and sale of the stock belonging to Muscatine County was a vain and useless transaction. The

property of the company was gone; its franchises were gone; the amount which the stockholders had arranged to realize was gone; and consequently the stock could have been nothing but an empty name; and the attempt to keep it afloat for speculative purposes is not such as should recommend it to a court of equity. The parties to such a transaction ought at least to be left to their remedies at law. A court of equity should have no sympathy with any such contrivances to gain a contingent or speculative advantage, if any such is to be gained.

On the other hand, if, as intimated by the counsel, there is a contingency of obtaining the sixteen per cent appropriated to this stock by the arrangement made between the two railroad companies (now amounting to over $32,000), the case stands on no better grounds to recommend it to the special interposition of the court. This result cannot be attained without in some way depriving the county of Muscatine of that sum. If by payment of the county bonds, or in any other way, the sixteen per cent becomes liberated from the decree, the county will be equitably entitled to the money, unless Cromwell, the appellee, has a better equity. To him it will be a windfall, like a prize in a lottery. He paid no adequate consideration to entitle him to claim it as a matter of equity. If the law gives it to him, he should seek his remedy at law. Equity will not lend its aid to any such games of hazard. The levy on the stock and the formal sale of it by Harrison, after having with other creditors obtained a decree for appropriating the sixteen per cent due on it, was evidently not done for the honest purpose of making his debt by the sale, or he would not have allowed it to be sold for fifty dollars. The object must have been to get, by the forms of sale, some ulterior unconscionable advantage by the possession of the stock. The purchaser, Cromwell, stands in no better position. He comes into court with a very bad grace when he asks to use its extraordinary powers to put him in possession of thirty thousand dollars' worth of stock for which he paid only fifty dollars. The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain, but will leave the party to his remedy at law. This has been so often held on bills for specific performance,

and in other analogous cases, that it is unnecessary to spend argument on the subject.

*Decree reversed, and cause remanded with directions to dismiss the bill of complaint.*