Kreissl v. Distilling Co. of America.

FILLIPP KREISSL

v.

THE DISTILLING COMPANY OF AMERICA et al.

[Filed October 29th, 1900.]

| | |
|---|---|
| 61 | 5 |
| 64 | 702 |
| 61 | 5 |
| 65 | 41 |
| 65 | 54 |
| 65 | 56 |
| 65 | 58 |
| 61 | 5 |
| e66 | 389 |
| 66 | 391 |
| 66 | 409 |
| e66 | 420 |
| f66 | 422 |
| 66 | 423 |

1. Stockholders in an incorporated company are entitled to have other owners of stock therein exercise and express their judgment in respect to the control and management of the affairs of the corporation, except in cases in which, by legislative authority, stockholders may delegate their duty to others.

2. Under statutes authorizing stockholders to vote by proxy at the meetings of stockholders, the voting power, including the temporary power to exercise and express judgment on proposed measures, may be confided to the proxy or attorney appointed. To this extent the voting power of stock may be severed from its ownership. Other stockholders, however, may rely upon the grantor of such proxy to retain the power to exercise and express his own judgment by revoking the grant and resuming his right to do so.

3. If stockholders, after consideration, determine and adjudge that a certain plan for conducting and managing the affairs of the corporation is judicious and should be adopted, they may, by powers of attorney, or the creation of a trust of their stock, so combine their powers as to provide for the execution of the plan so determined upon. If stockholders combine by either mode to entrust and confide to others the formulation and execution of a plan for the management of the affairs of the corporation and exclude themselves by acts irrevocable for a fixed period from the exercise of their judgment thereon, or if they reserve to themselves any benefit to be derived from such plan to the exclusion of other stockholders who do not come into the combination, the agreement to so combine is contrary to the duty owed to other stockholders and contrary to public policy.

This bill was filed by Fillipp Kreissl as a stockholder in a corporation of this state known as the Distilling Company of America.

It sets forth an agreement made June 9th, 1900, between the owners and holders of shares of capital stock in the Distilling Company of America who should subscribe and become parties thereto, therein called the "stockholders," parties of the first part; William L. Bull, William F. Harrity, Rudolph Keppler, Alvin W. Krech and Richard Sutro, therein called "the committee," parties of the second part; the Mercantile Trust Company, therein called "The Trust Company," party of the third part, and August Belmont, John L. Cadwallader, T. Jefferson Coolidge, Jr., William F. Harrity and Alvin W. Krech, therein called "the trustees," parties of the fourth part.

The agreement recites as follows:

"Whereas the parties of the second part are a committee acting at the request of holders of shares of the capital stock of the Distilling Company of America, for the purpose of instituting an inquiry into the affairs of the company, and recommending such action as might be for the benefit of the stockholders, and whereas said committee has made a report to the stockholders, bearing date June 1st, 1900, a copy of which

Kreissl *v*. Distilling Co. of America.

is hereto attached and made part hereof, and has recommended that the stockholders deposit with the trust company, subject to the order of the committee, their certificates of stock, for the purpose of transferring the same to the trustees, who for the period of five years from the 1st day of July, 1900, shall be the owners thereof under the provisions of this agreement."

The agreement also contains, among others, the following provisions:

"1st. The stockholders respectively agree that they are the owners and holders of shares of stock of the said company to the amount at par respectively set opposite their names or deposited as hereinafter provided; that they will at once deposit with the trust company, in accordance with and subject to the terms of this agreement, at its office in the city of New York, the said stock to be disposed of as herein provided, and will execute and deposit with the said trust company transfers of said stock and any powers of attorney or other documents necessary to transfer the legal title to said stock to said committee, in order to empower said committee to fully carry out the provisions and exercise the authority set forth in this agreement, and will accept in place of said stock negotiable certificates of deposit signed by the said trust company, in suitable form, to be prescribed by the said committee.

"2d. The committee shall cause said stock to be transferred on the books of the company into the names of the trustees when a majority of the entire capital stock shall have been deposited, or sooner if the trustees shall request the same, and receive from the Distilling Company of America a single certificate, or certificates, in such amounts as may be convenient, in the names of the trustees in lieu thereof, such certificate or certificates to be lodged with said trust company, subject to all the terms and conditions of this agreement.

"3d. The committee is authorized and empowered to consider and present to the trustees the best means in their judgment of providing the said Distilling Company of America with such additional capital as may in the opinion of the trustees be necessary for the purposes of said company, and for the issue of such bonds, mortgages or other obligations as may be deemed advisable; provided, however, that such means so to be proposed shall not involve the assessment of any sum of money to be paid by the said stockholders. When the committee shall have presented the said subject, and the same shall be agreed on by the trustees, with such modification or changes as may be proposed thereto by the trustees, the same shall be signed by the trustees or a majority of its members and shall be filed or lodged at the office of the trust company in the city of New York, with which copies shall be left for distribution to the stockholders, and a brief publication of the fact of the adoption of the best means in their judgment referred to, shall be made at least twice in each week for at least two weeks, in two newspapers published in the city of New York, and one each in the cities of Boston, Philadelphia, Louisville, Cincinnati and Chicago; and such

Kreissl *v.* Distilling Co. of America.

lodgment of such plan, and such publication thereof shall be conclusive notice to all stockholders and to all holders of certificates of deposit, of the adoption thereof; provided, however, and it is made an express condition of the execution hereof by the stockholders, that any holder of such certificates of deposit who may not agree to such plan within fifteen days after the expiration of such publication, may withdraw from this agreement and be entitled to a return of his said stock by filing with said trust company, at its office in the city of New York, written notice of his election so to do; whereupon said holder shall be released from the obligations of this agreement and from such plan, and shall be entitled to a return of his stock and receive it upon surrender of the certificates of deposit issued for the same without deduction for expenses or otherwise; but as to every certificate holder who shall not within said period make and file such notice in writing, his assent to and ratification of such plan shall be conclusively and finally assumed, conferred and given, and shall be irrevocable; and provided further, however, that the trustees shall have liberty to proceed to execute such plan and this agreement, irrespective of the parties so withdrawing, and such withdrawing parties shall have no further interest of any kind under this agreement or such plan, except upon such terms as the trustees may prescribe.

"4th. The trustees are hereby given full authority and power to carry out and put into effect the plan to be adopted by it as aforesaid, and to take any and all steps necessary to such plan, or which in its judgment may tend to promote the same, subject to the rights of the holders of the certificates of deposit to dissent therefrom and withdraw from this agreement as hereinbefore provided.

"5th. This agreement is made upon the condition that the stockholders of said Distilling Company of America who do not sign this agreement, or do not deposit their certificates of stock in accordance with its terms, shall have no rights and be entitled to no benefits under the same, except that the committee is empowered to extend the time in its discretion, in which holders of stock may assent to and come in under this agreement or the plan to be hereafter adopted, and to admit such stockholders to participation in the benefits thereof upon such conditions and penalties as the committee and the trustees may decide.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"8th. This agreement and the means adopted for raising additional capital shall respectively become binding and effective whenever a majority of all outstanding stock shall assent thereto, or whenever, in the judgment of the trustees a sufficient number of stockholders have signed this agreement or deposited their stock.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"12th. The trustees agree that they will vote upon the shares of stock standing in their names at all meetings of the stockholders of the Distilling Company of America for such directors and for such measures as shall in their judgment be for the best interest of the stockholders."

The bill further charges that the parties are proceeding to perform and carry out this agreement, and that the trustees

propose to vote upon the stock so transferred to them, at the next election, for directors of said distilling company. The bill charges that the agreement in respect to the above provisions and others, infringes upon his rights as a stockholder in said company.

To this bill the Distilling Company of America, and the persons named in the agreement as trustees were made parties defendant. Among the prayers of the bill was one for an injunction restraining the trustees from voting upon any of the stock deposited with the Mercantile Trust Company under the agreement, at any meeting of the stockholders of the company, except to adjourn the same from time to time.

On filing the bill and its accompanying affidavits, an order to show cause was allowed.

On the return of the order the defendants filed answers and affidavits. The answers admitted the execution of the agreement and the purpose to carry it out.

By the affidavits it appears that out of an issue of stock amounting at par to about $75,000,000, stock amounting at par to about $54,000,000 has been deposited with the said trust company under the agreement.

*Mr. Robert H. McCarter* and *Mr. James E. Howell,* for the order.

*Mr. Richard V. Lindabury, contra.*

MAGIE, CHANCELLOR.

The complainant, as the owner of eighty-five shares of preferred stock and four hundred and twenty shares of common stock of the Distilling Company of America, each share being of the par value of $100, seeks relief which will affect stockholders of the company owning shares of both kinds of stock amounting at par to about $54,000,000, but of a total of stock issued amounting at par to about $75,000,000. The holdings of complainant are therefore comparatively small; but, however insignificant his interest may be, he is entitled to relief against inequitable conduct which does or may injuriously affect

his interest. The comparatively small amount of interest should, doubtless, lead the court to scrutinize his claim with care, and not to interfere with interests in the same property which are vastly greater, except it is necessary for his eventual relief upon the final hearing.

It is preliminarily objected that the bill is defective for want of parties. Two of the parties, namely, the Mercantile Trust Company and the committee who entered into the agreement, parts of which are set out in the statement prefacing this opinion, are not made defendants. It is not necessary to determine whether or not the omitted parties are necessary parties in the conduct of this suit. If the objection was raised by demurrer (and the answers so present it), it could be remedied by an amendment, and such an amendment would be ordered if necessary. But assuming them to be essential parties, and their omission to be objectionable, I do not think that the hand of the court should be stayed from affording present relief by a preliminary injunction, if such relief is essential to complainant's protection, and in nowise affects either of the two absent parties. This conclusion is deducible from the action of the court of errors on approving the refusal of the chancellor to dissolve the injunction which had issued upon a bill which omitted a necessary party. *Morgan* v. *Rose, 7 C. E. Gr. 583.* The learned chief-justice who delivered the opinion of the court declared that the chancellor rightly exercised his discretion in refusing to withdraw, on this technical ground, the protective arm of the court. If, therefore, the complainant presents a case for a preliminary injunction against those who are parties and have answered, and such injunction in no respect affects those who may be necessary parties but have not been included, I think the discretion of the court would be properly exercised in allowing such an injunction.

I proceed, therefore, to the consideration of the question presented by this order. Since its solution involves, to a large extent, the right of complainant to the relief he prays, it seems that the cause might have been brought on for hearing and the whole matter considered upon bill and answer, because no serious contest respecting the facts is exhibited.

Whatever deficiencies appear in making out the charges of the bill respecting the agreement in question and what has been done under it by the affidavits annexed thereto, they are supplied by the frank admissions of the answers and the accompanying affidavits, which make clear the facts on which complainant bases his contention.

Those facts are that an agreement such as is set out in the bill was made and executed by all the parties; that the party of the first part consisted of stockholders of the Distilling Company of America who joined in the deposit of their certificates of stock in the manner prescribed therein; that stockholders holding stock to the par value of about $54,000,000 have done so, and that the several parties intend to proceed and perform the agreement. If carried out, the trustees may vote at the coming election for directors, fixed by the by-laws of the company for October 17th, 1900, and having a large majority of the stock, their vote thereon would elect directors.

In *Taylor* v. *Griswold, 2 Gr. 222,* the supreme court, in dealing with the question of the reciprocal rights and duties of shareholders of private corporations, established the principle that the obligation and duty of incorporators to attend in person at meetings of the corporation and execute the trust or franchise reposed in or granted to them, is implied in, and forms part of, the fundamental constitution of every charter in which the contrary is not expressed. They thereupon denied the right of such corporation to authorize any stockholder to vote by any power of attorney or proxy, unless power to do so had been expressly or impliedly conferred by the legislature. This conclusion was reached on the avowed ground that by the association of the individuals in such corporation, each associate was expected to exercise his judgment upon all measures which he and his associates could take respecting the enterprise, which judgment his associates might assume would be favorable to his own interest and consequently beneficial to their interest. The power to judge and determine upon such measures could not, except under legislative authority, be delegated to another.

Since the decision of the case referred to, the legislature has conferred upon stockholders of private corporations, created

by special laws or under general statutes, the power to appoint a proxy· to cast their votes. Notwithstanding this grant of legislative authority, questions have arisen as to the extent to which stockholders may confer authority upon proxies.

The principle of that case has been applied in this court in the determination of causes involving such questions. If the present cause is essentially the same as those in which this court has already acted, I should feel it my duty to apply the same principle, even if I doubted its applicability, which I do not.

In *Cone* v. *Russell, 3 Dick. Ch. Rep. 208,* Vice-Chancellor Pitney held void as against public policy, an agreement between stockholders of a private corporation, by which the owners of certain shares agreed with the owners of other shares to give the latter a proxy irrevocable for five years, and empower them to vote on the shares during that time, in consideration of which the latter parties agreed to so vote said shares as to procure the employment of one of the owners thereof as a manager of the corporation at a specified salary. This conclusion was reached notwithstanding the fact that relief by a declaration that the agreement was void was sought by one of the parties thereto, who was *in pari delicto.*

In *White* v. *Thomas, &c., 7 Dick. Ch. Rep. 178,* the same vice-chancellor had to deal with a case presenting the following facts: All the holders of the stock of a private corporation which had then been issued, entered into an agreement among themselves whereby their shares were transferred to a trustee, who issued to each stockholder an assignable trust certificate for the amount of his stock so transferred. By the agreement the trustee was required to so vote upon the shares that a majority of the directors should be elected upon the nomination of holders of certain certificates, being a minority of the whole number, and a minority of the directors should be elected upon the nomination of holders of certain certificates, being a majority of the whole number of such certificates. After discussing the question whether such an agreement could be sustained as to those entering into it, for a purpose which was declared to be proper, and pointing out the apparently insuperable difficulties in carrying out its provisions, the vice-chancellor found

it unnecessary to decide its validity as to the parties to the agreement, while remaining the sole owner of the stock or the beneficial interest in the stock issued; but as to the complainant who had subsequently acquired shares of stock afterwards issued, and also some of the trust certificates representing original shares, he held that the agreement was unenforceable and void as contrary to public policy.

Some expressions in these opinions have led to the contention that the vice-chancellor pronounced invalid any scheme or device by which the power to vote upon stock was separated from the ownership. That such was not his view is apparent from his language in *Cone* v. *Russell,* where he says: "This conclusion does not reach so far as to necessarily forbid all pooling or combining of stock where the object is to carry out a particular policy with a view to promote the best interests of all the stockholders; the propriety of the object validates the means and must affirmatively appear." It is also apparent from the later decision of the same vice-chancellor in *Chapman* v. *Lee, 46 Atl. Rep. 591,* where a bill was filed to set aside a power of attorney and proxy made by the complainant, conferring upon defendant very extensive powers, and irrevocable for a specified period. The vice-chancellor held that the so-called proxies were included in an instrument which clothed defendant with ownership of complainant's stock with power to sell or exchange it, or to organize a new corporation, and in that case to accept stock therein in place of complainant's shares. It was held that defendant substantially became the owner of the stock as trustee for the complainant. Although the instrument did not set out the trust in detail, yet the court held that as such trust was set out in full in the answer, it could be taken as disclosing the purposes of the trust. Finding it established by the proofs that defendant had expended labor and money and had made contracts in reliance on the continued control of the stock, the vice-chancellor held that the agreement was not void and dismissed the bill.

Under the statutes permitting stockholders to give proxies and under the doctrine of the cases in this court to which I have referred, I conceive it is impossible to maintain that a

proxy which confides to the attorney thereunder the power to exercise his judgment in certain cases, and so separates the voting power from the ownership of the stock, is void *per se.* The principle may, doubtless, limit the power conferred to voting on certain questions and in a certain way. But if, as is customary, the power is unlimited, it must be exercised by the judgment and determination of the attorney on any questions which may be presented.

The power of revocation is deemed sufficient to protect the rights of other stockholders. If, however, the stockholder undertakes to make irrevocable his grant of power and to denude himself for a fixed period of the power to judge and determine and vote as to the proper management and control of the affairs of the corporation, then whether the grant of power is good or not must depend on the purposes for which it is given.

When the scheme devised does not embrace a grant of irrevocable powers by proxy, but seeks a similar object by the creation of a trust and the appointment of a trustee, to whom the title of the stock is conveyed, a like doctrine must be applied. If no provision is made for the conduct of the trustee, at least he would be bound to vote on the stock held in trust in accordance with the expressed wishes of the *cestui que trust;* but if the transfer of the legal title to the stock is made and accepted under an agreement of the stockholder which deprives him of all power to direct the trustee, and all opportunity to exercise his own judgment in respect to the management of the affairs of the corporation, then whether the transaction is open to the objection of other stockholders, as depriving them of the right they have to the aid of their co-stockholders, must be dependent upon the purposes for which the trust was created, and the powers that were conferred.

If stockholders, upon consideration, determine and adjudge that a certain plan for conducting and managing the affairs of the corporation is judicious and advisable, I have no doubt that they may, by powers of attorney, or the creation of a trust, or the conveyance to a trustee of their stock, so combine or pool their stock as to provide for the carrying out of the plan so determined upon. But if stockholders combine by either mode

to entrust and confide to others the formulation and execution of a plan for the management of the affairs of the corporation, and exclude themselves by acts made and attempted to be made irrevocable for a fixed period, from the exercise of judgment thereon, or if they reserve to themselves any benefit to be derived from such a plan to the exclusion of other stockholders who do not come into the combination, then in my judgment such combination and the acts done to effectuate it, are contrary to public policy, and other stockholders have a right to the interposition of a court of equity to prevent its being put into operation.

The agreement in this case must be tested by these principles.

An examination of it discloses that it asserts the necessity of the corporation acquiring in some mode additional working capital. From the affidavits annexed to the answers, I think it established that notwithstanding the large assets of the company, additional capital is nevertheless deemed by the stockholders who have entered into the agreement to be judicious and necessary. To this extent the agreement indicates the judgment of those stockholders, but no plan for procuring such capital is disclosed as having been formulated or determined upon. On the contrary the formulation of such a plan is expressly entrusted to the trustees and the committee. Those stockholders, therefore, have expressed no judgment in respect to what plan should be adopted.

The respectable gentlemen who have become trustees under this agrement, detail in their answer the need of additional working capital, and the reasons why an agreement of the kind entered into might enable such capital to be procured. The motives that induced them to enter into the agreement and their present purposes in respect to its execution, are exhibited by the statements contained in the following paragraph of their answer, viz. :

"That in the early part of the year 1900 they had become more or less familiar with the affairs of the Distilling Company of America, of its financial requirements and of the needs of the constituent companies which it controlled, for additional working capital. They found that the stock of the Distilling Company of America had continuously declined

in the market; that the constituent companies had ceased paying divi-
dends and that doubt and suspicion was publicly entertained as to the
ability and integrity of the management. That it was represented to
them by holders of a large amount of the stock of said defendant company
that no financial plan for providing the companies with additional capital
could be successfully carried out unless the individuals or institutions
capable of advancing such amounts of money as were required by the
company for this purpose were assured of an honest and conservative
management of such companies, coupled with a fixed policy for a period
of years, and that such results could best be obtained through the instru-
mentality of a voting trust. These defendants were earnestly solicited
by the holders of a very large amount of said stock to act as such voting
trustees, and their services were specially solicited for the reason that
none of these defendants had been previously identified with the affairs or
management of the said defendant company or its constituent companies,
and because they either were personally interested in the stock or repre-
sented in their individual or corporate capacity large holdings of said
stock. With the exception of one of their members, none of these de-
fendants had personal or business relations with the managing officials of
the Distilling Company of America and have not met nor conferred, either
directly or indirectly, with the management of said company in reference
to said voting trust; that they accepted their designation as voting
trustees absolutely free from any commitment or understanding with the
existing officers and directors in the belief that they could benefit the
stockholders by controlling and providing capital for the purposes of the
company, and by exercising a supervision over the selection of directors
and officers of the defendant company and its constituent companies, and
by controlling such selection could secure a conservative and fixed policy
during the existence of said trust. That these defendants do not intend,
and it has never been their intention, to carry out any plan for the
rehabilitation of the affairs of said company which may be approved by
them without first obtaining the approval of the holders of stock who have
deposited their shares under the voting trust agreement;"

but they proceed further to say,

"that although no actual plan for such purpose has yet been formally
settled by the committee or these trustees, various plans have been con-
sidered and are in contemplation, dependent upon the result of the exam-
ination of the affairs of the companies."

It is obvious, however, that these statements in nowise limit
or restrict the trustees in the exercise of such powers as have
been conferred, or attempted to be conferred, by the agreement
in question.

But it is argued that the agreement is only tentative and the
stockholders who joined therein have reserved to themselves

the power, after the plan contemplated should be formulated and promulgated in the manner provided, to withdraw from the combination and receive back their stock. Such a provision is elaborately set out in the third article of the agreement. If this provision would have the effect of preventing the execution of the plan, this argument might perhaps be effective. But the proviso to that article renders the withdrawal of stock, even of all the combining stockholders, ineffective in preventing the execution of a plan devised by the trustees, because it expressly provides that the trustees shall have liberty to execute such plan irrespective of the parties so withdrawing.

It is further argued, however, that assuming that the trustees might thus proceed to execute their plan, its execution would require the co-operation of the directors of the company. I can conceive no plan which would not require the directors' action. But in considering this argument, it must be remembered that the trustees by this agreement are empowered to vote upon the stock while remaining in their names, and the amount of stock controlled by them will undoubtedly secure the election of directors. It should also be remembered that a large majority of directors are to be elected at the approaching election. It will, therefore, be seen that if the trustees vote as required under this agreement, they will elect a controlling majority of the board of directors. While I should entertain no doubt that the gentlemen composing these trustees would not take advantage of withdrawing stockholders, and execute a plan they disapprove of, the fact that they are given express power to do so, and the power to elect the board of directors to co-operate with them, deprives the transaction of any tentative character and justifies its being pronounced contrary to public policy, in that it provides for a possible management of the affairs of the company during a fixed period of time, by the judgment and determination of others, and not by the judgment and determination of complainant's associates in this corporation.

By the provisions of the fifth article of the agreement, stockholders who do not enter into it are expressly declared to be entitled to no benefits under it. Upon the argument, the meaning of that provision was not made clear. But it is evident

that the parties to the agreement conceived that assenting stockholders had an interest in carrying out this agreement which would not enure to the benefit of those who did not join in it. By the last clause of the proviso to article three this idea clearly appears. Whether the privilege of subscribing additional shares of stock issued, or taking bonds or obligations issued to raise additional capital was the benefit intended to be conferred on the assenting stockholders to the exclusion of the non-assenting stockholders, I can only conjecture. It is sufficient to say that the agreement discloses an intent to exclude stockholders who do not enter into it from whatever benefits could be claimed thereunder. This, in my judgment, shows a combination contrary to public policy and one to which any non-assenting stockholder may object.

There are other criticisms upon this agreement which need not now be discussed. Upon the two points above named, it is open to objection and I think the preliminary injunction should issue restraining the trustees from voting on any stock acquired by the agreement, according to the terms of the prayer of the bill.