155 So. 371

### BANKERS' FIRE & MARINE INS. CO. v. SLOSS et al.
### 6 Div. 511.

Supreme Court of Alabama.
June 7, 1934.

---

☞For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

H. H. Grooms and Coleman, Spain, Stewart & Davies, all of Birmingham, for appellant.

28

Wm. S. Pritchard, Jas. W. Aird, Thos. H. Fox, and David R. Solomon, all of Birmingham, for appellees.

THOMAS, Justice.

The action of the trial court in sustaining demurrers to the bill and in dismissing the same on failure to amend, is assigned as error.

The bill was by the Bankers' Fire & Marine Insurance Company, a corporation, to restrain respondents from conspiring and in concert unlawfully interfering with the business of the complainant, and from interfering and disturbing the harmonious relations existing between the complainant and its stockholders.

That pleading and its exhibit, with the usual leave of reference, will be taken in its entirety, and the exhibit will illustrate, explain, and supplement when the bill is tested by demurrer. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Webb v. Sprott, 225 Ala. 600, 144 So. 569; Woodall v. Southern Mfg. Co., 223 Ala. 262, 135 So. 446; Hobson v. Robertson, 224 Ala. 49, 138 So. 548; United States Fidelity & Guaranty Co. v. First Nat. Bank of Lincoln, 224 Ala. 375, 140 So. 755; Gains v. Griffin, 225 Ala. 130, 142 So. 513; Snellings Lumber Co. v. Porter, 225 Ala. 164, 142 So. 560; Schwab v. Carter, 226 Ala. 173, 145 So. 450.

The contract, among other things, provided for action or proceedings for dissolution of

the corporation and liquidation of the corporate business, for the creation of an irrevocable proxy, and to hold stockholders cooperating with them harmless of costs and expense. The manner of respondents' wrongful acts and interference with complainant's right to continue and conduct its lawful business in the enjoyment of its good name and will, the solvency of the corporation and conduct of its going business, are well stated in the bill as amended.

The subject of good will in business and professions has been discussed in this jurisdiction, and authorities collected. 14 Alabama and Southern Digest, Good Will, pp. 268–270; 22 Cyc. 771; 28 C. J. 738, 747; Collas v. Brown, 211 Ala. 443, 100 So. 769, prayed for injunction to protect; 82 A. L. R. 1031; Maxwell v. Sherman, 172 Ala. 626, 55 So. 520; Knowles v. Jones, 182 Ala. 187, 62 So. 514; Saxon v. Parson, 206 Ala. 491, 90 So. 904.

A casual examination of the contract exhibited will show that it is not a lawful "voting trust" such as is recognized by the well-considered authorities. 3 Bouvier Law Dictionary, 3410; 10 Cyc., page 343, § 19; 40 Cyc., page 228; 14 C. J. 915. The definition and holdings of such a trust, however, may be stated to be an agreement which accumulates in the hands of a person or persons, the shares of stock of several owners, in trust for the purpose of voting them, in order to control the corporate business and affairs, and differs from a proxy or reciprocal proxy in that it does not make either party the agent of the other. Manson v. Curtis, 223 N. Y. 313, 119 N. E. 559, Ann. Cases 1918E, 247. It has been declared in this jurisdiction, that a voting trust is not per se unlawful; that the most familiar illustration of a voting trust which may be lawful, *is where the object is to carry out a particular lawful policy of the corporation, with the view to promote the best interests of all stockholders*, determined by the propriety and justness of the ultimate corporate purpose sought to be accomplished, *when the character of the agreement or means to accomplish the end contemplated is of equal importance.* Mobile & Ohio Railroad Co. v. Nicholas, 98 Ala. 92, 12 So. 723; Moses v. Scott, 84 Ala. 608, 4 So. 742; Chapman v. Bates, 61 N. J. Eq. 658, 47 A. 638, 88 Am. St. Rep. 459; Boyer v. Nesbitt, 227 Pa. 398, 76 A. 103, 136 Am. St. Rep. 890; 14 C. J., page 915, note 82.

In Mary Lee Coal & Railway Co. v. Knox & Co., 110 Ala. 632, 638, 19 So. 67, 69, the Nicholas Case, supra, was cited with approval, saying: "In one sense, corporations are entities; *but corporations and the stockholders are not separate and distinct entities for all purposes and in all respects.* A corporation is a collective body composed of different persons. * * * Mor. Corp. § 227. *Whatever is of benefit to the corporation, as a collective body, is a benefit to the stockholders or persons of which it is composed.*" (Italics supplied.) Corey v. Wadsworth, 118 Ala. 488, 25 So. 503, 44 L. R. A. 766.

And in Mobile & Ohio Railroad Co. v. Nicholas, 98 Ala. 92, 118, 12 So. 723, 731, this court made significant observation of a voting trust, as follows:

"There is no rule of law which requires contracts to be upheld, which are void as against public policy, in order to preserve 'good faith' or 'innocent parties.' The rule of estoppel is often applied to prevent undue advantage by one person over another, but the rule does not extend to contracts which are void because contravening public policy. Considering the opinion (Hafer v. New York, Lake Erie & Western R. R. Co., 14 Weekly Law Bulletin, page 68, 19 Abbott's New Cases (N. Y.) 454) as an entirety, we do not regard it as authority to the proposition that an agreement which provides for a separation of the right to vote from the holder of the stock is 'per se,' at all times, and under all circumstances, contrary to public policy, and void. We have examined case after case, and find generally that the agreements declared void by the courts, where the power to vote was separated from the stockholder, and vested in third persons, were under circumstances which showed that the purpose to be accomplished was unlawful,—such as the courts would not sanction if the principal had voted, and not a proxy; and, in case of a mere dry trust, it is held that the stockholder might revoke a power of attorney in form irrevocable. * * *

"Certainly, the case of Griffith v. Jewett, 15 Wkly. Law Bul. 419 (19 Abbott's New Cases (N. Y.) 457), or of Moses v. Scott, 84 Ala. 608, 4 So. 742, do not sustain complainants' contention in this respect. If there were no precedents, upon principle, we would hold that, in determining the validity of an agreement which provides for the vesting of the voting power in a person other than the stockholder, regard should be had to the condition of the parties, the purpose to be accomplished, the consideration of the undertaking, interests which have been sur-

rendered, rights acquired, and the consequences to result."

The case of Moses v. Tompkins, 84 Ala. 613, 4 So. 763, held that equity will interfere by injunction to restrain trustees and directors from illegally voting certain stock, which they claim the right to vote, when the effect of such vote will be to control the election of directors, which is otherwise provided by law. Walsh v. State ex rel. Cook, 199 Ala. 123, 126, 74 So. 45, 2 A. L. R. 551. Mr. Chief Justice Stone observed in his concurring opinion, that injunction was the only efficient remedy to prevent the two directors from doing authorized acts until the rehabilitation of the corporation could be perfected by legitimate corporate methods.

In Moses v. Scott, 84 Ala. 608, 611, 612, 4 So. 742, 744, Mr. Chief Justice Stone says:

"* * * It can make no difference if several stockholders uniformly vote together, or so vote in obedience to a prior agreement that they will do so. The vote when cast is but the expressed wish of the stockholder, or, at least, must be so regarded, and no other stockholder can be supposed to be injured thereby. To hold otherwise would greatly abridge the voter's right to cash his ballot as he pleases. Cook, Stocks, § 618; Faulds v. Yates, 57 Ill. 416, 11 Am. Rep. 24; Barnes v. Brown, 80 N. Y. 527; State ex rel. v. Smith, 48 Vt. 266; Woodruff v. Wentworth, 133 Mass. 309; Pender v. Lushington, [L. R.] 6 Ch. Div. 70.

"Whether an agreement to vote as a unit, or as an agreed majority may dictate, *for any given length of time, is a contract so binding in its terms that no party to it can withdraw from it,* or disregard it, without the consent of his fellows, *may be a very different question.* Possibly public policy may exert an influence in the solution of this problem. Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173 [8 Am. Rep. 159]; Miss. & Mo. R. R. Co. v. Cromwell, 91 U. S. 643 [23 L. Ed. 367]; Moon v. Crowder, 72 Ala. 79; Danforth v. Phil. & C. M. Railway Co., 30 N. J. Eq. 12.

"*And even if such contract be lawful,* and, upon its naked face, exert a continuing force, *the grave question comes up, will a court of chancery, in its enlightened discretion, lend its aid in the enforcement of a contract of so doubtful policy?* Fisher v. Bush, 35 Hun (N. Y.) 641; Miss. & M. R. R. Co. v. Cromwell, 91 U. S. 643 [23 L. Ed. 367]." (Italics supplied.)

In South & North Alabama Railroad Co. v. Gray, 160 Ala. 497, 49 So. 347, Mr. Chief Justice Anderson makes the observation that stockholders have the right to vote stock as they wish; cited with approval Judge Stone's observations from Moses v. Scott, supra, and says:

"* * * There is an exception to the rule, and courts will restrain the holder of a majority of the capital stock in a company from voting that stock for the purpose of oppressing or defrauding the minority stockholders, but the courts will not restrain such holder of a majority of the stock from otherwise exercising his rights as a stockholder. Davis v. Electric Co., 77 Md. 35, 25 A. 982; Gamble v. Water Co., 123 N. Y. 91, 25 N. E. 201, 9 L. R. A. 527; Montgomery Traction Co. v. Harmon, 140 Ala. 520, 37 So. 371. The statute (section 3641 of the Code of 1907) further prevents the voting of stock for the creation of a trust or monopoly. As we have heretofore said, the stockholders had no right to vote their stock in favor of the sale of another's stock. We do not see, however, why they should not be permitted to vote for a disposition of the corporate property as authorized by the statute. If what they vote for should, when consummated, prove injurious to the stockholders, they have the right to prevent the consummation of same by the directors, even if a majority of the stockholders should vote for same, or to set the sale aside if fraudulent or oppressive." 160 Ala. 513, 514, 49 So. 347, 350.

The statute he cites, section 3641 of the Code of 1907, is that of section 7207, Michie's Code, prohibiting monopoly, trust, or unlawful combination.

In Memphis & Charleston Railroad Co. v. Woods, 88 Ala. 630, 7 So. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81, cited by Judge Anderson in South & North Alabama Railroad Co. v. Gray, supra, the decision is by Mr. Chief Justice Stone, and it is asserted as the rule, that a minority of stockholders of a corporation may maintain a bill in equity to prevent illegal action on the part of the majority of stockholders, after due request to the proper officers to interfere, and their failure or refusal to act, and where the illegal action complained of or threatened is on the part of a majority of the directors, acting for other interests than the interests of that corporation and its stockholders.

And in Mack v. DeBardeleben Coal & Iron Co., 90 Ala. 396, 401, 8 So. 150, 151, 9 L. R. A. 650, on the authority of the Woods Case, supra, Mr. Chief Justice Stone again observes of corporate fidelity and restraint of the betrayal thereof, that it is only when other or ulterior "interest antagonizes duty that equity will stretch forth its restraining hand," cit-

ing his decision in Memphis & Charleston Railroad Co. v. Wood, 88 Ala. 630, 7 So. 108, 7 L. R. A. 605, 16 Am. St. Rep. 81; Moses v. Scott, 84 Ala. 608, 4 So. 742. This was the saying, that when such betrayal and antagonism exist and the injury or threatened injury warrants, injunctive relief will be awarded. Cook on Stock and Stockholders, § 618.

■ It is the consensus of opinion of this and other courts, that *when the purpose of a voting trust is lawful and the action contemplated is to be carried out in the interest of all the stockholders*, a part of the stockholders may, in the absence of constitutional and statutory restrictions, suspend for a time their right to vote their stock in the corporation and vest such right in others who have a beneficial interest in the stock in such corporate business. Mobile & Ohio Railroad Co. v. Nicholas, 98 Ala. 92, 12 So. 723; 14 C. J. 915, note.

We may again observe that the agreement exhibited by the bill and for consideration had not the effect of constituting or the provision for setting up a lawful voting trust within the rule of the cases. Its effect, when taken with the averments of the bill, which it aids, is that with third parties, who had obtained a roll of its stockholders, the agreement is to be carried out, not in the interest of the corporation and all of its stockholders; that the contemplated acts are those of an individual intermeddling (outsiders and third parties averred to be insolvent) with complainant's stockholders who may be induced by the false and fraudulent misrepresentations of its business and management; that it "is losing money," when it is not; that it is "not fulfilling its corporate purposes for which it was organized," when it is; that it is "squandering the assets of the corporation," when it is not doing so; and that it "has abandoned its corporate franchise," when it has not so abandoned the same. All of this is averred to be for the purpose, and has the effect of intercepting the right and harmonious conduct of the going business corporation and the accomplishment of the purposes for which it was organized, and by irresponsible and insolvent third parties acting for a selfish and improper purpose not within the law.

■ We may advert, in passing, to the authorities holding that the remedy at law, to exclude a concurrent remedy in equity, must be as complete, practical, and as efficient to the ends of justice in the particular matter and in its prompt administration as is the remedy in equity. 21 C. J. 50; Brown v. E. Van Winkle Gin & Machine Works, 141 Ala. 580, 39 So. 243, 6 L. R. A. (N. S.) 585; Federal Land Bank of New Orleans v. Davis (Ala. Sup.) 152 So. 226;[1] Donald v. Reynolds (Ala. Sup.) 154 So. 530;[2] City of Walla Walla v. Walla Walla Water Company, 172 U. S. 1, 19 S. Ct. 77, 43 L. Ed. 341. The violations as to enjoyment of good will are regarded as irreparable, not susceptible of exact proof or compensation (Taylor v. Howard, 110 Ala. 468, 18 So. 311); and constantly recurring (28 C. J. 747).

■ It is recognized in America and in England, that the right to have and conduct a lawful business and to enjoy its good name and good will, are property rights, which will be protected, in a proper case and procedure, by injunction, from unlawful interference. Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 66 So. 657; Walker v. City of Birmingham, 216 Ala. 206, 112 So. 823; Bowen v. Morris, 219 Ala. 689, 123 So. 222; Walker v. Ferguson, 221 Ala. 549, 130 So. 64; Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196. That is to say, intangible property rights, such as the use of the good name and will of a trade, business, or occupation, have been made the subject of protection by injunction in a proper case, and are necessary to the exercise and full enjoyment of the tangible and intangible properties of such corporation or business. Hardie-Tynes Mfg. Co. v. Cruise, supra; Local Union No. 313, etc., v. Stathakis, 135 Ark. 86, 205 S. W. 450, 452, 6 A. L. R. 894; Esco Operating Corporation v. Kaplan, 144 Misc. 646, 258 N. Y. S. 303; Underhill v. Murphy, 117 Ky. 640, 78 S. W. 482, 111 Am. St. Rep. 263, 4 Ann. Cas. 780.

The cases agree that the right to carry on one's lawful business without obstruction from third parties, is such a necessary property right, that the courts have never hesitated to protect, by injunction, from wrongful invasion or destruction from without. The principle is stated in Local Union No. 313, etc., v. Stathakis, 135 Ark. 86, 205 S. W. 450, 452, as follows:

"It is commonly said that one may do as he pleases with his own; but that is not an exact statement of the law. He cannot so use his own as to inflict unnecessary injury upon another. This truth is so just and so apparent that early in the history of our law the maxim grew up, 'Sic utere tuo ut alienum

non lædas.' This maxim was quoted and translated by Mr. Justice Pitney in the case of Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260 [L. R. A. 1918C, 497], Ann. Cas. 1918B, 461, where it was said:

"'The familiar maxim, "Sic utere tuo ut alienum non lædas" literally translated, "So use your own property as not to injure that of another person," but by more proper interpretation, "so as not to injure the rights of another" (Broom's Legal Maxims [8th Ed.] 289) applies to conflicting rights of every description.'"

This case (Local Union No. 313, etc., v. Stathakis, supra) is declared to be of special interest, for its recognition of the fact that the mere presence of a picket, without any element of physical intimidation, *may amount to a constraint upon the will of possible customers,* who are deterred from according patronage, not by reason of sympathy with the claims of the picketeers, *but because they do not wish to become involved in the controversy.*

In Esco Operating Corporation v. Kaplan, 144 Misc. 646, 258 N. Y. S. 303, 308, 309, it is declared:

"The courts of this and sister states recognize that intangible property is as much the subject of protection by injunction as tangible property. The applicable rule has been well stated by Mr. Justice Blackmar in Newton Co. v. Erickson, 70 Misc. 291, 294, 296, 126 N. Y. S. 949, 951, where he said: 'There is no branch of the law better settled than the jurisdiction of equity to protect the good will of a business against trespass and invasion by its writ of injunction. * * *' Any other holding would mean that 'you must not use violence *toward persons or tangible property,* but you may cripple your adversary *by destroying his good* will and business connections.' And further (page 298 of 70 Misc., 126 N. Y. S. 949, 954): 'Violence against persons and tangible property will not be permitted, neither will attacks on intangible property rights, like business, good will, or trade, be permitted. One cardinal principle must be borne in mind, that any element of illegality essential to a scheme or combination makes the whole illegal.' And in Underhill v. Murphy, 117 Ky. 640, 645, 78 S. W. 482, 483, 111 Am. St. Rep. 262, 4 Ann. Cas. 780, the court observed that 'when a man has, by years of toil and fair dealing with his customers, built up a valuable business and good will, he is as much entitled to protection * * * in this species of property as in the home that shel-

ters him, or the coat that protects him from the winter's cold.' The geographical extent of the good will of plaintiffs' business is not limited to the sidewalks under the marquees of their various theaters. [Italics supplied.] * * *

"The scalp wound may be healed through the surgeon's art, but at a time of economic suffering, when credit and good name are more sensitive to shock than the nervous system, courts must still give some consideration to what former Chief Judge Cardozo speaks of as 'The economic and social needs to which a decision will respond.'"

In Duplex Printing Press Co. v. Deering, 254 U. S. 443, 465, 466, 41 S. Ct. 172, 176, 65 L. Ed. 349, 16 A. L. R. 196, Mr. Justice Pitney made the observation, that "the accepted definition of a conspiracy is a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. Pettibone v. United States, 148 U. S. 197, 203, 13 S. Ct. 542, 37 L. Ed. 419, 422. If the purpose be unlawful, *it may not be carried out, even by means that otherwise would be legal; and, although the purpose be lawful, it may not be carried out by criminal or unlawful means.*" (Italics supplied.)

In Brown v. American Freehold Land Mortgage Co. of London, 97 Tex. 599, 80 S. W. 985, 987, 67 L. R. A. 195, 199, 200, is the statement, that "in Delz v. Winfree, 80 Tex. 400, 16 S. W. 111, 26 Am. St. Rep. 755, this court quoted from Walker v. Cronin, 107 Mass. 555, 562, as follows: 'Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill, and credit. He has no right to be protected against competition; but he has a right to be free from a malicious and wanton interference, disturbance, or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right, by contract or otherwise, is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing.'"

Such is the effect of our cases in this jurisdiction, Blount v. Sixteenth St. Baptist Church, 206 Ala. 423, 424, 90 So. 602; State v. Goldstein, 207 Ala. 569, 578, 93 So. 308; Lehmann v. State Board of Public Accountancy, 208 Ala. 185, 94 So. 94; Ashcraft v. Chamblee, 213 Ala. 601, 105 So. 694; Walker v. City of Birmingham, 216 Ala. 206, 112 So. 823; Bowen v. Morris, 219 Ala. 689, 123 So. 222;

Wiegand v. Alabama Power Co., 220 Ala. 620, 127 So. 206; Walker v. Ferguson, 221 Ala. 549, 130 So. 64; State ex rel. Dally v. Woodall, 225 Ala. 178, 142 So. 838.

The business of insurance is recognized generally as affected with a general or public interest, and is within the police power of the state to reasonably safeguard and protect. Hoadley v. Purifoy, as Auditor, 107 Ala. 276, 290, 18 So. 220, 30 L. R. A. 351; Continental Insurance Co. v. Parkes, 142 Ala. 650, 39 So. 204; State Life Insurance Co. v. Westcott, 166 Ala. 192, 52 So. 344; Tallassee Oil & Fertilizer Co. v. Holloway, 200 Ala. 492, 494, 76 So. 434, L. R. A. 1918A, 280; Port of Mobile v. Louisville & Nashville Railroad Co., 84 Ala. 115, 4 So. 106, 5 Am. St. Rep. 342; German Alliance Insurance Go. v. Lewis, 233 U. S. 389, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189; McCarter v. Firemen's Ins. Co., 74 N. J. Eq. 372, 73 A. 80, 414, 29 L. R. A. (N. S.) 1194, 135 Am. St. Rep. 708, 18 Ann. Cas. 1048.

The question of an *illegal voting trust agreement* providing for irrevocable proxy has been much discussed by the courts. 14 C. J. 1433; Harvey v. Linville Improvement Co., 118 N. C. 693, 24 S. E. 489, 32 L. R. A. 265, 54 Am. St. Rep. 749; Bridgers v. First Nat. Bank of Tarboro, 152 N. C. 293, 67 S. E. 770, 31 L. R. A. (N. S.) 1199; White v. Thomas Inflatable Tire Co., 52 N. J. Eq. 178, 28 A. 75. We have noted that Mr. Chief Justice Stone indicated in Moses v. Scott, 84 Ala. 608, 612, 4 So. 742, that such irrevocable grants were condemned by the courts on the grounds of public policy, on the authorities cited. In Kreissl v. Distilling Co. of America, 61 N. J. Eq. 5, 47 A. 471, it was declared that stockholders are entitled to have other owners of stock exercise *their judgment* in respect to the control and management of the affairs of the corporation, except in cases in which by legislative authority stockholders may delegate their duties to others; that the *temporary power* to exercise and express judgment on proposed measures may be confided in the proxy to such an extent that the voting power of stock may be severed from its ownership; that other stockholders may rely upon the grantor of such *proxy to retain the power to exercise and properly express his own judgment by revoking the grant and resuming his right* to so act for the benefit of the corporate powers and purpose and conduct of that business.

In White v. Thomas Inflatable Tire Co., 52 N. J. Eq. 178, 28 A. 75, 78, Vice Chancellor Pitney said:

"The general principle is thus stated by Mr. Beach in his treatise on Corporations (section 306): 'On general principles, the right to vote on stock cannot be separated from the ownership, in such sense that the elective franchise shall be in one man, and the entire beneficial interest in another, nor to any extent, unless the circumstances take the case out of the general rule. It matters not that the end is beneficial and the motive good, because it is not always possible to ascertain objects and motives, and, if such a severance were permissible, it might be abused.' And see what was said in Cone v. Russell, 48 N. J. Eq. 208, at pages 212, 214, 21 A. 847."

See, also, Kreissl v. Distilling Co. of America, supra.

In Sheppard v. Rockingham Power Co., 150 N. C. 776, 64 S. E. 894, Mr. Chief Justice Clark collects the authorities and makes the following observation:

"The stock agreement takes away from the stockholders all right to vote for a period of three years after the first installation of the power plant of the Rockingham Power Company, and provides that the decision of the voting committee as to any of the facts or conditions of the said stock deposit agreement shall be conclusive and bind all the parties in interest. The agreement is not made for the protection of bondholders but to enable the stockholders to pool the stock and to control the corporation by a voting trust. The plaintiff was not a party to said agreement, but is a purchaser of 10 shares of the stock thus pooled.

"The agreement deprives the stockholders of the right to vote, and is therefore contrary to public policy and void. Harvey v. Improvement Co., 118 N. C. 693, 24 S. E. 489, 32 L. R. A. 265, 54 Am. St. Rep. 749; Cone v. Russell, 48 N. J. Eq. 209, 21 A. 847; Shepaug Voting Trust Cases, 60 Conn. 579, 24 A. 32; Clarke v. Railroad (C. C.) 50 F. 338, 15 L. R. A. 683; Cook, Stockholders (4th Ed.) § 622. Harvey v. Imp. Co., supra, is 'on all fours,' except that the agreement here is, if anything, more objectionable. In Harvey's Case we said: 'Every stockholder must be free to cast his vote for what he deems for the best interest of the corporation; the other stockholders being entitled to the benefit of such free exercise of his judgment by each. And hence any combination or device by which any number of stockholders shall combine to place the voting of their shares in the irrevocable power of another is held contrary to public policy.'"

34

In Bridgers v. First Nat. Bank of Tarboro, 152 N. C. 293, 67 S. E. 770, 773, 31 L. R. A. (N. S.) 1199, the opinion of Vice Chancellor Pitney was quoted from at length, and the conclusion announced was:

"In Warren v. Pim, 66 N. J. Eq. 353, 59 A. 773, Judge Pitney, in a well-reasoned and elaborate opinion, considers these voting trust agreements in every point of view. At page 378 of 66 N. J. Eq., at page 782 of 59 A., he says: 'I base my view that an irrevocable voting trust, or any other irrevocable grant (uncoupled with an interest) assuming to confer upon the donee the power to vote at corporate elections for the choice of directors, is unlawful and void, first, upon the plain letter of our general corporation act (P. L. 1896, p. 277 [1 Comp. St. 1910, p. 1595, § 1 et seq.])'; and, secondly, upon the reason, spirit, and manifest policy of the act.' * * * 'An irrevocable assignment of the voting power, or, what amounts to the same thing, an act that irrevocably delegates the voting power to one who has no interest in the stock, upon trust that he will vote according to his own judgment, discretion, and will, is an attempt to constitute a substitute voter who is not actuated by any interest in the welfare of the company. The difference is fundamental.' Again he says: 'There may be room for dispute as to how unimportant may be the duties of a bona fide trustee with respect to the property, in order that the right to vote in the management of the property may be annexed to the trust, but there is in my mind no doubt that the right to vote cannot be annexed to a trust which holds only the power of voting. An appurtenant right cannot be appurtenant to itself alone. An incidental power cannot be incidental to itself alone. Such a status is to me so unthinkable as a human voice without a human being, as a lever without a fulcrum, and, of course, to say that the assignment of the mere voting power "in trust" passes to the trustee by implication such interest in the stock as will support the voting power is the same as to say that the power may be appurtenant to itself alone.' In accord with these views is the opinion of the Supreme Court of Georgia in Morel v. Hoge, 130 Ga. 625, 61 S. E. 487, 16 L. R. A. (N. S.) 1136 [14 Ann. Cas. 935]."

It is alleged in the bill filed October 14, 1933, that complainant was incorporated to do, and has been for four years engaged in the business of fire insurance; has built up a valuable patronage and good will with more than 9,000 policyholders, with insurance in force amounting to $17,000,000; is solvent and owes no obligations except those to its policyholders, and against such obligations "carries full reinsurance in good and solvent companies." It is averred that its paid-up capital stock on June 30, 1933, was $293,057.50, a surplus of $100,000, a contingency reserve of $22,469.86, making a total of capital of $415,-527.36, and that the greater part of its investment was in bonds of the state of Alabama and the political subdivisions thereof; that its capital stock of 58,611½ shares was of the par value of $5 per share and owned by more than 750 stockholders, a large number of whom are policyholders, as well as agents who write a large portion of the insurance from which complainant derives its earnings. It is further averred of its business and good will, that it has been built up through years of "fair and honest dealing with its policyholders and stockholders, the full and prompt payment of the claims and losses against which it issues policies of insurance; and the continuance of the said business is dependent upon the good will and confidence reposed in complainant by its policyholders and stockholders."

The bill contains averments of conspiracy as follows:

"The parties respondent are not stockholders and never have been stockholders in complainant company. The respondent, A. Page Sloss, is or has been a speculative real estate promoter and broker; and the respondent, Allen J. Krebs has been a construction contractor. Notwithstanding that the respondents have neither of them had any pecuniary interest in complainant company, the respondents have conspired between themselves to break down the business and good will of the complainant, which the complainant has built up through years of fair and honest dealing in the discharge of its lawful business aforesaid. In pursuance of that conspiracy, respondents have obtained a list of the shareholders of the complainant and are going about the country creating ill-will and dissension among the said stockholders by falsely and fraudulently misrepresenting the business and management of the complainant, falsely representing to the stockholders that the complainant is losing money, is not fulfilling its corporate purposes for which it was organized, is squandering the assets of the corporation, and has abandoned its corporate franchises. And complainant avers that said representations were false and fraudulent in this, that complainant is not losing money, that complainant is fulfilling the corporate

purposes for which it was organized, that complainant is not squandering the assets of the corporation, and that complainant has not abandoned its corporate franchises. And complainant avers that respondents have solicited the following stockholders, some of whom are policyholders, and have made the false and fraudulent representations to them, viz.: W. D. Partlow, R. C. Partlow, J. H. Coleman, F. M. Grant, and to sundry others whose names are to complainant unknown. And complainant avers that policyholders, viz., Erskine Ramsay and others whose names are unknown to complainant have been induced by the false and fraudulent machination of respondents, to cancel their insurance and to decline to renew their insurance in complainant company. Upon such false and fraudulent representations, the respondents are soliciting complainant's shareholders to enter into a contract in writing with them, the substance of which is set forth and contained in a written instrument, a copy of which is hereto attached, marked Exhibit 'A,' and made a part of this bill of complaint as fully and effectively as if it were herein fully set forth."

And the effect of the written instrument exhibited is thus stated:

"In and by the terms of said written instrument, the respondents propose to have the stockholders deposit their shares with some bank as an escrow holder who will hold the same under the control of the respondents for four purposes enumerated in said instrument, namely: (1) So that the respondents may effect a sale of said shares on a profit sharing basis with the stockholder; (2) That the respondents may effect a sale of the business, property and assets of the complainant as an entirety and distribute the proceeds of such sale on a profit sharing basis to the stockholder and respondents; (3) To institute proceedings looking to the final liquidation of the business, property and assets of the complainant and distribute the proceeds of such liquidation ratably to the stockholder and to the respondents; (4) To grant to the respondents irrevocable proxy and power of attorney so that the respondents may inject themselves into the business and management of complainant corporation. To the accomplishment of the purposes aforesaid, the respondents propose in said instrument to devote their best efforts, time and ability," and to hold the stockholder harmless as to the costs on the bill filed.

■ We have indicated above the general definition of "civil conspiracy"—to do a wrongful act and the injury proximately resulting therefrom (Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 356, 16 A. L. R. 196; National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69); that where there is a conspiracy to act to such wrongful end, an element of illegality essential to such scheme to combine and injure renders the enterprise as executed, or sought to be executed, illegal; that the test of what is lawful for an individual to do is not always the true test of what is lawful for a combination of individuals conspiring to a designated end; that there are things and results lawful for an individual to do or accomplish, which are not lawful for a combination of individuals conspiring and acting to a common end. Pickett v. Walsh, 192 Mass. 572, 78 N. E. 753, 6 L. R. A. (N. S.) 1067, 116 Am. St. Rep. 272, 281, 7 Ann. Cas. 638; Newton v. Erickson, 70 Misc. 291, 126 N. Y. S. 949; Esco Operating Corporation v. Kaplan, 144 Misc. 646, 258 N. Y. S. 303, 308, 309; Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 356, 16 A. L. R. 196.

It is provided by section 3447, Code of 1928, as against a conspiracy, combination, or agreement to interfere with or hinder business, that "two or more persons who, without a just cause or legal excuse for so doing, enter into any combination, conspiracy, agreement, arrangement, or understanding for the purpose of hindering, delaying, or preventing any other persons, firms, corporation, or association of persons from carrying on any lawful business, shall be guilty of a misdemeanor." It is averred that appellees have agreed and confederated with each other, in violation of the securities act, and without authority of the statutes providing for licensed brokers or agents for insurance, to prevent the corporation from the continued right and unhindered conduct of its lawful business by unwarranted interference, contrary to the law.

We have indicated that the agreement exhibited will be found to be largely beyond the general and recognized view and scope of a mere holding and voting trust of a corporation within and pursuant to law.

■■ The demurrers confessed the averments of the bill as amended to be true. In view of the authorities to which we have adverted, the trial court should have overruled appellees' demurrer and permitted the bill to be tried upon answer and proof. From the action of the trial court in sustaining the demurrers of Sloss and Krebs and in dis-

missing the bill as amended, the appeal was taken, errors assigned, and duly presented to this court. In this action of the trial court there was reversible error.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.